2010 VT 75

# State of Vermont v. Patrick Spooner

[8 A.3d 469]

No. 09-260

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 13, 2010

*Megan Campbell,* Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Reiber**, C.J. Following a jury trial, defendant Patrick Spooner was convicted of aggravated sexual assault of a child under eighteen years of age, in violation of 13 V.S.A. § 3252(d). On appeal, he argues that the trial court violated the Vermont Rules of Evidence and the Confrontation Clauses of Chapter I, Article 10 of the Vermont Constitution and the Sixth Amendment to the United States Constitution when the trial court admitted certain tape-recorded statements from the victim rather than bringing the victim in to present live testimony. We affirm.

¶ 2. The record evidence may be briefly summarized as follows. The victim, T.S., lives with her biological father and stepmother. She had visitation time with her biological mother and stepfather before they got divorced. Defendant is T.S.'s stepfather. In December 2007, T.S. revealed to her stepmother that she and defendant had touched each other's private areas; she pointed to her chest and vaginal area. Stepmother did not immediately question T.S. following this disclosure. Soon thereafter, T.S.'s biological father entered the home, and, after prompting by stepmother, T.S. told him she had a secret. T.S. and her father went up to T.S.'s bedroom, where she recounted the same events. Her father did not pursue further details at this time, but notified the police the same day.

¶ 3. T.S. was interviewed a total of three times. Three days after her father notified the police, she completed her first interview with an investigator from the Department for Children and Families (DCF) and a police officer. It lasted approximately forty-five minutes and was recorded. The interview took place at a neutral child advocacy center where children are interviewed in cases of suspected sexual abuse. The interview initially focused on veracity — whether or not T.S. knew the difference between lying and telling the truth. The interview's focus then shifted to a number of incidents of abuse that occurred between T.S. and defendant. The DCF investigator described T.S. as shy and nervous but "quite frank" in her recounting of the events.

¶ 4. The second interview took place in January 2008 with the DCF investigator and a police officer present. The second interview was also recorded and took place at the same child advocacy center. The focus of this interview was to determine whether T.S. had ever seen defendant's penis. T.S. indicated that she had, at least twice. The third interview occurred in April 2008 with only the police officer present. Between the second and third interviews, the DCF investigator and the police officer learned about a specific tattoo located on defendant's penis. As a result, the focus of this third interview, which was not recorded, was on whether T.S. knew about defendant's tattoos. T.S. was able to describe some of defendant's tattoos, but did not recall the one on his penis.

¶ 5. Before trial, the State, citing Vermont Rule of Evidence 804a, moved to admit T.S.'s statements made to her stepmother,

her father, the police officer, and the DCF investigator.[1] In January 2009, the court held a pretrial hearing on the State's motion to admit these statements. Defense counsel argued that having four witnesses describe the disclosures was unnecessarily cumulative, unfairly prejudicial, and would improperly bolster T.S.'s credibility. Defense counsel also argued that the statements were inadmissible under Rule 804a because they did not have substantial indicia of trustworthiness and were prepared for a legal proceeding. The court concluded that the statements made to T.S.'s stepmother and father contained substantial indicia of trustworthiness and were admissible under Rule 804a. As for the statements made to the DCF investigator and the police officer, the court concluded that these statements were also trustworthy and did not appear to be "rehearsed or the subject of suggestion." The court, however, held that T.S.'s statements to the DCF investigator and to the police officer were unnecessarily duplicative, and that, as a result, only one of these witnesses could testify at trial about T.S.'s statements regarding the alleged abuse.

¶ 6. All four proposed witnesses testified at the two-day trial. T.S.'s stepmother and father testified regarding her statements made to them, consistent with the court's pretrial order. The State called the police officer to testify about the general investigation, rather than as an 804a witness. T.S.'s biological mother, who was previously married to defendant, testified about T.S.'s relationship with defendant and about the night of the incident that led to charges being filed. In addition, T.S. testified during the State's case-in-chief. Defense counsel cross-examined T.S. and drew out various inconsistencies between T.S.'s live testimony and her past statements.

¶ 7. Following these witnesses, the State explained that it still intended to play T.S.'s recorded statements when the DCF investigator took the stand. The court asked what purpose would be served by playing the recorded statements now that T.S. had already presented live testimony. The State responded that before the commencement of trial the parties reached a stipulation

---

[1] Rule 804a provides that statements made by children under twelve years of age are admissible if: (1) the statement is offered in a proceeding where the declarant is the putative victim of a sexual assault or sexual crime; (2) the statements were not taken in preparation for a legal proceeding; (3) the child is available to testify; and (4) "the time, content, and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a.

whereby portions of the recorded statements would be played during the State's direct examination of the DCF investigator. The State explained that "it would be better, potentially for both parties, that the jury could hear exactly what [T.S.] had said and exactly how the questions were posed." Defense counsel acknowledged that he previously agreed to this approach but said that he stipulated to the admission of these statements under the assumption that T.S. was not going to testify. Defense counsel argued that, after T.S.'s live testimony, the recorded statements were unnecessarily duplicative and prejudicial to the interests of defendant.

¶ 8. In chambers, following the State's expert's testimony, the State asserted that the recorded statements were necessary to rebut defense counsel's attack of the credibility of the complaining witness and to corroborate T.S.'s testimony and therefore outweighed any prejudice to defendant. Defense counsel reiterated his concern that the recorded statements would be cumulative because T.S. testified in the State's case-in-chief. The court concluded that, under *State v. Gallagher*, the child's testimony in the State's case-in-chief did not preclude admission of 804a statements. 150 Vt. 341, 344, 554 A.2d 221, 223 (1988). The court confirmed that defense counsel maintained the right to compel T.S. to return to court the following day.

¶ 9. The DCF investigator then took the stand, and the State played the stipulated portions of the recorded statements from the first interview. Defense counsel cross-examined the DCF investigator, challenged T.S.'s "word," and raised inconsistencies in the testimony and statement of T.S. Following cross-examination, defense counsel moved for a directed verdict, which the court denied. Defendant then took the witness stand and began to present his version of the facts. At the close of the first day of trial, defense counsel stated that he had subpoenaed T.S. for the next day and that he would play recorded statements from a deposition of T.S.

¶ 10. At the start of the second day of trial, while in chambers, the court noted its concern about T.S. being brought in to testify a second time. Defense counsel responded that he wanted to recall T.S. to ask her about three things: (1) a discrepancy between her live testimony and recorded statements regarding the time of day an incident of alleged abuse by defendant occurred; (2) a discrepancy between her live testimony and a statement made in a

deposition regarding whether defendant left to use the bathroom during an incident of claimed abuse; and (3) a statement in her deposition regarding the death of a neighbor's son, which defense counsel argued related to T.S.'s credibility because the veracity of the story was uncertain.

¶ 11. Defense counsel agreed with the court that, as to the first two requests, they could be served by playing portions of the recorded statements from the first interview and the deposition.[2] When the court asked about the third proffered need for T.S.'s testimony, defense counsel acknowledged its irrelevance. The court therefore allowed defense counsel to play recorded statements from T.S.'s interview and deposition for the first two purposes, but did not allow defense counsel to offer evidence regarding the alleged death of the neighbor's son. The court made no explicit ruling, nor were there any objections on the record in chambers or when courtroom testimony resumed. Rather, the parties voluntarily agreed that defense counsel would play excerpts from the two tapes in lieu of T.S.'s live testimony.

¶ 12. Defense counsel opened the second day of trial with excerpts from one of the statements taken in the recorded interviews and the deposition of T.S. The first excerpt, from the first interview with the DCF investigator and the police officer, revealed discrepancies in T.S.'s testimony regarding the time of day an incident of abuse allegedly occurred. The second excerpt, from a deposition, revealed that T.S. had previously stated the defendant did not leave during an episode of abuse, while her live testimony indicated that he left momentarily. Defense counsel cited both discrepancies in closing arguments. After the close of testimony, the jury asked to rehear T.S.'s recorded statements — those introduced by both the State and defendant — from the

---

[2] As to the first proffered need for T.S.'s live testimony, the court asked defense counsel whether he could get the needed information from the recorded statements. Defense counsel answered "yes." When the court asked about the need for T.S. to testify about the alleged discrepancy in her stories regarding whether defendant went to the bathroom during the incident of abuse, defense counsel explicitly stated that "[t]he tape will cover this, too." At one point in the chambers conference, the trial judge began a sentence by saying that "[s]o it sounds like the first two were going to be probably accomplished through" — and then defense counsel interrupted and finished the sentence by saying "[t]he tape." Eventually, the trial judge said that the first two reasons for playing the tapes were legitimate and the tapes would eliminate the need for T.S. to testify a second time. Defense counsel responded: "Right."

interview with the DCF investigator and police officer. The jury found defendant guilty of aggravated sexual assault, and defendant appealed.

¶ 13. Defendant challenges his conviction on three grounds. First, defendant claims that the trial court committed reversible error by admitting the recorded statements under Rule 804a in the State's case-in-chief because they were used to buttress T.S.'s live testimony. Defendant next contends that the recorded statements were inadmissible under the Vermont Rules of Evidence because T.S. was not available to be cross-examined after their admission, as required under Rules 804a and 806. Third, defendant claims that the admission of T.S.'s statements, without cross-examination after the statements were admitted, violated his Confrontation Clause rights under the Vermont and federal constitutions. Defendant concedes that he did not raise these constitutional arguments at trial and that, as a result, we review them only for plain error.

I.

¶ 14. Defendant first contends that the admitted statements were not Rule 804a statements because they were used to bolster T.S.'s testimony. Defendant hinges this claim of error on the State's assertion that it was using the tape recordings as corroborative evidence. Because the statements were partly used for this purpose, and because Rule 801(d)(1)(B)[3] covers some of these types of statements, defendant claims that they were effectively inadmissible under Rule 804a.

¶ 15. We review trial courts' evidentiary rulings deferentially and reverse only when there is an abuse of discretion resulting in prejudice. *State v. Jackson*, 2008 VT 71, ¶ 9, 184 Vt. 173, 956 A.2d 1126. This Court has held that statements admitted under Rule 804a may be used to bolster live testimony. *Gallagher*, 150 Vt. at 348-49, 554 A.2d at 225-26. In *Gallagher*, the victim testified, and, in addition, the court admitted hearsay testimony under Rule 804a — specifically, out-of-court statements that the victim made to a teacher and social worker. Defense counsel argued that the

---

[3] Rule 801(d)(1)(B) provides that a statement is not hearsay when the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

hearsay statements should have been excluded because they were unduly prejudicial. We rejected this argument, noting that it was "unpersuasive given the Legislature's explicit recognition of the corroborative value of hearsay testimony admitted under the exception of [Rule 804a]." *Id.* at 348, 554 A.2d at 225-26. This Court further elaborated that Rule 804a, when read in its entirety, contemplates that "the out-of-court statements of the child declarant, as well as the [declarant's] direct testimony, will both be admitted." *Id.* at 348, 554 A.2d at 226. In reaching this conclusion, we looked at the Reporter's Notes to Rule 804a, which indicated that the exception was "designed to cure 'the frequent problem of lack of corroboration caused by the traditional hearsay rules.' " *Id.* (citation omitted).

¶ 16. As we made clear in *Gallagher*, in cases of sexual crimes that meet the criteria of Rule 804a, the Legislature intended that a child victim's corroborative statements would be admissible, whether or not they met the requirements of Rule 801(d)(1)(B).[4] Here, the trial court's ruling on the admission of the recorded statements under Rule 804a was, in fact, based entirely on *Gallagher's* holding that the State could use both the child declarant's live testimony and past statements. We agree and hold that the trial court did not err in admitting recorded statements to buttress T.S.'s live testimony.

¶ 17. Defendant argues, however, that the recorded statements were not admissible under Rule 804a, apparently believing that the rule requires that a witness to the statements testify to their content. In fact, the rule makes the statements admissible and does not impose any restriction on how they will be introduced. Thus, we have previously held that recorded statements made by a victim are admissible under Rule 804a. *State v. LaBounty*, 168 Vt. 129, 136-38, 761 A.2d 1, 6-8 (1998); see also *State v. Blackburn*, 162 Vt. 21, 25, 643 A.2d 224, 226 (1993) (holding that a videotaped interview between the child and an investigator was admissible). In *LaBounty*, social workers tape-recorded interviews with the child victim and played the statements to the jury. We held that these tape recordings were admissible under Rule 804a because the trial court correctly

---

[4] For this reason, we need not address defendant's argument that the recorded statements were inadmissible under Rule 801(d)(1)(B).

concluded that they were not made in preparation for a legal proceeding and had sufficient indicia of trustworthiness. 168 Vt. at 136-38, 761 A.2d at 6-8.

## II.

¶ 18. Defendant further claims that it was reversible error for the trial court to admit the recorded statements because defense counsel did not cross-examine T.S. following their admission. Regarding this claim of error, defendant does not take issue with the State playing the recorded statements during its own case-in-chief. Defendant does, however, take issue with the fact that he was "not permitted" to recall T.S. Defendant first alleges violations of the Vermont Rules of Evidence. Defendant maintains that Rule 804a(a)(3) requires the child declarant to be available to testify. Defendant also cites Rule 806 for the proposition that if a hearsay statement is admitted, and the party against whom the statement has been admitted calls the declarant as a witness, he may examine the declarant "as if under cross-examination." Finally, defendant claims a violation of his Confrontation Clause rights under Chapter I, Article 10 of the Vermont Constitution and the Sixth Amendment to the United States Constitution.

¶ 19. First we address defendant's claim of error under the Rules of Evidence. As noted earlier, our review of a trial court's evidentiary rulings is, in general, deferential, and reversal is warranted only upon an abuse of discretion. *Jackson*, 2008 VT 71, ¶ 9. This case presents a different problem because defense counsel voluntarily agreed to not recall T.S. and to play the recorded statements instead. By agreeing to admission of certain evidence, a party waives his right to review of the trial court's ruling on appeal. See *State v. Poutre*, 154 Vt. 531, 535, 581 A.2d 731, 734 (1990) (holding that, when defense counsel withdrew an objection to admission of evidence, the defendant "waived his right to a review of the court's ruling on appeal"); see also *State v. Laprade*, 2008 VT 83, ¶ 11, 184 Vt. 251, 958 A.2d 1179 (holding that we would not review a claim of error regarding the admission of evidence when the defendant stipulated to its admission at trial).

¶ 20. Here, the trial court expressed concern over a recall of T.S., but never ruled to that effect. Defense counsel also never objected to playing the tapes in lieu of T.S.'s live testimony.

Rather, in response to questions from the court regarding whether the recorded statements could perform the same function as T.S.'s live testimony, defense counsel stated numerous times that they could. Defense counsel agreed with the court that the need for T.S. to testify was eliminated as long as the State stipulated to the admission of the portions of the recorded statements and the deposition offered by defendant. When the second day of trial resumed in open court, the State concluded: "The State has reached a stipulation with the defense." Thus, the record is clear that defendant had the opportunity to recall T.S., but chose to play the tapes instead. Defendant cannot now claim a violation of either Rule 804a or Rule 806 when he agreed that T.S. would not need to be recalled for cross-examination; defendant waived his right to claim this as error on appeal.

¶ 21. We next address defendant's claim that admission of the recorded statements, in lieu of T.S.'s live testimony, violated his constitutional right to confront witnesses against him. Defendant contends that because defense counsel did not have an opportunity to cross-examine T.S. after the State played the recorded statements, their admission violated his Confrontation Clause rights, was prejudicial, and resulted in plain error.

¶ 22. Confrontation Clause rights are subject to the rule of preservation, but this Court will review unpreserved constitutional claims, such as the claims presented here, for plain error. See V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "We will find plain error only in those rare and extraordinary cases where the error is both obvious and strikes at the very heart of the defendant's constitutional rights or results in a miscarriage of justice if we do not recognize it." *State v. Campbell*, 146 Vt. 25, 27, 497 A.2d 375, 377 (1985).

¶ 23. We have previously held that a trial court does not commit plain error by admitting, upon the parties' stipulation, a videotaped deposition in lieu of the declarant's live testimony. *State v. Koveos*, 169 Vt. 62, 67, 732 A.2d 722, 726 (1999). In *Koveos*, the parties reached an agreement that a videotaped deposition could be used at trial, rather than haling the child witness into court. During the deposition, the child witness gave testimony highly favorable to the State, and the State, over the defendant's objection, used the videotaped deposition at trial. On

appeal, the defendant argued that its admission was a violation of the Confrontation Clause because: (1) he did not attend the deposition; and (2) the deposition was used instead of an available witness's testimony. *Id.* We rejected the defendant's arguments and held that we "fail[ed] to see how the admission was error at all," since the defendant had "specifically agreed to the procedure that allowed admission of the deposition, without the live testimony of the [witness]." *Id.* We come to the same result today — defendant cannot now claim error regarding the course of action he impliedly, if not explicitly, agreed to, and there is therefore no basis for finding plain error on these facts.[5] Further, defendant does not explain how, exactly, he was prejudiced by admission of the recorded statements. Accordingly, we find no basis to disturb the jury's verdict.

*Affirmed.*

---

[5] Defendant does not claim that defense counsel did not have the power to waive his right to confront witnesses against him. See generally *New York v. Hill*, 528 U.S. 110, 114 (2000) (recognizing a "general rule that presumes the availability of waiver" of constitutional rights by counsel, although certain fundamental rights require personal waiver by defendant). Many courts allow defense counsel to waive defendant's confrontation right as a matter of trial tactics. See, e.g., *United States v. Stephens*, 609 F.2d 230, 232-33 (5th Cir. 1980) ("[C]ounsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy."). Further, we have previously noted that, in general, defense counsel does not need a defendant's express authorization when making a tactical or strategic decision, even when that decision waives some of defendant's constitutional rights. See *State v. Bailey*, 144 Vt. 86, 103, 475 A.2d 1045, 1055 (1984), *abrogated on other grounds by Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), *as recognized in State v. Benoit*, 158 Vt. 359, 362, 609 A.2d 230, 231 (1992). When there is no demonstration of ineffective assistance of counsel, "counsel's word on such matters is the last." *Hill*, 528 U.S. at 115. Here, although defendant alludes to ineffective assistance of counsel, "the proper avenue of raising the issue of ineffective assistance of counsel is through a motion for post-conviction relief, and not through a direct appeal of a conviction." *State v. Gabaree*, 149 Vt. 229, 232-33, 542 A.2d 272, 274 (1988).