2011 VT 60

**STATE of Vermont v. David
BOGLIOLI**

[26 A.3d 44]

No. 09-410

¶ 1. June 16, 2011. Defendant, David Boglioli, appeals his conviction for voluntary manslaughter posing multiple grounds for reversal. He claims that he was denied a fair trial when he was precluded from presenting evidence of the victim's threats against others. He claims reversible error on various theories regarding the jury instructions. He also argues that the evidence presented was insufficient to support the verdict of guilty for voluntary manslaughter and that this verdict was against the great weight of the evidence. We affirm the trial court's decision in its entirety.

¶ 2. Prior to the killing, defendant and the victim had a history. The two were neighbors and the victim made a habit of tormenting defendant. According to the evidence presented at trial, the victim physically assaulted defendant on numerous occasions and shot projectiles at defendant's home including BBs, darts, pellets, rocks, and bullets. He also threatened to kill and hurt defendant and verbally harassed him. There was testimony that the victim grew marijuana in his home and that his menacing tactics were aimed at getting defendant to move so that the victim could use the house to grow marijuana. Testifying at trial in his own defense, defendant claimed that he was afraid of the victim, that the victim bragged about shooting his own brother with an arrow and that he had threatened to do the same to defendant. Defendant and other witnesses also testified about physical assaults by the victim on people other than defendant.

¶ 3. Defendant explained that his fear of his neighbor was such that he would go to great lengths to avoid being outside when the victim was present. He testified that when he saw the victim nearby he would double and triple bag his garbage to "keep it from smelling" while he waited for an opportunity to dispose of it in the common dumpster. The day of the killing, defendant needed to take out his garbage. He looked outside and seeing no signs of the victim, decided it was safe to do so. Carrying a pistol, he headed for the dumpster, when the victim appeared behind him, emerging from between two houses swinging an axe handle and blocking defendant's way back to his home. Defendant claims that the victim stated "let's get this over," while holding the axe handle cocked like a batter at the plate. Defendant drew his gun and pulled the trigger. The victim was mortally wounded and stopped breathing within three minutes. Defendant went inside and called a friend to tell him that the victim had attacked him, that he had killed the victim, and to ask his friend to care for his pets.

¶ 4. Defendant was charged with second degree murder in violation of 13 V.S.A. § 2301. He raised the affirmative defense of self-defense. The State requested a jury instruction on the lesser-included offense of voluntary manslaughter, which the trial court granted over defendant's objection. The jury convicted defendant of voluntary manslaughter, and defendant now appeals.

¶ 5. Post trial, defendant moved for acquittal pursuant to Vermont Rule of Criminal Procedure 29(c) and alternatively for a new trial pursuant to V.R.Cr.P. 33. He argued that the State's evidence was insufficient to prove him guilty of voluntary manslaughter and that the jury's conclusion must therefore have been the product of a compromised verdict. Defendant reasoned that "[b]ased upon the juror's note to the [c]ourt suggesting

it rejected self defense due to excessive force, they apparently felt there was some wrongdoing. But since there was no evidence of sudden passion and great provocation, the jury could not convict of voluntary manslaughter without a compromise."

¶ 6. The trial court denied these motions concluding that "[t]here was substantial, admissible evidence from which a reasonable jury could find [d]efendant guilty of voluntary manslaughter beyond a reasonable doubt." The court noted that "evidence was presented to the jury that . . . [o]n the evening prior to the shooting, the victim had placed marijuana plants on [d]efendant's porch which clearly angered [d]efendant" and that "[o]n the day of the shooting, the victim followed [d]efendant to the dumpster, verbally abusing him, and possibly physically threatening him." The court explained that "[f]rom this evidence a reasonable jury could conclude that [d]efendant was provoked and did not have adequate time to cool off." The court reasoned that this finding was "not inconsistent with the jury rejecting the self-defense claim because [d]efendant's use of force went well beyond that which the defense authorizes, while also recognizing [d]efendant was provoked and did not have adequate time to cool off while standing at the dumpster, being confronted by the victim, and having been followed there by the victim the morning after an event which made [d]efendant extremely angry." On appeal defendant argues the trial court's conclusions were in error and that defendant is entitled to a judgment of acquittal or in the alternative a new trial.

¶ 7. The inquiry on review of a motion for judgment of acquittal is whether "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant" is guilty beyond a reasonable doubt. *State v. Delisle*, 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (quotation omitted). "[A] judgment of acquittal is proper only if the prosecution has failed to put forth *any* evidence to substantiate a jury verdict." *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999) (emphasis added).

¶ 8. The elements that must be proven to support a conviction of voluntary manslaughter are: "(1) adequate provocation; (2) inadequate time to regain self-control or 'cool off'; (3) actual provocation; and (4) actual failure to 'cool off.'" *State v. Kulzer*, 2009 VT 79, ¶ 25, 186 Vt. 264, 979 A.2d 1031 (quotation omitted). Defendant argues that the evidence presented by the State was too remote in time or inadequate to sufficiently prove the provocation element of voluntary manslaughter. Defendant acknowledges that the State presented evidence of the victim verbally threatening defendant immediately prior to the shooting, but argues that words alone do not constitute adequate provocation. While defendant is correct that "mere words will not justify a physical attack," *id.* ¶ 26 (quotation omitted), it was defendant who presented evidence that the victim threatened defendant with more than mere words in this instance. Defendant testified that on the day of the shooting the victim appeared out of nowhere, came within two or three feet of him, brandishing an axe handle and stated "[c]ome on mother fucker, let's get this over."* Defendant also testified that

---

* According to defendant, we cannot consider the evidence that the victim attacked defendant with an axe handle because it was offered by defendant and it is the prosecution's burden to prove guilt. While proving the elements of a crime is the prosecution's burden, when a defendant offers evidence that proves a matter for the prosecution, the jury and this Court may take cognizance of that evidence. To follow defendant's argument to

544

in shooting the victim he "was protecting [his] life" and "had no recourse but to shoot." This evidence, along with the victim's history of violent behavior toward defendant, taken in the light most favorable to the State, is sufficient to fairly and reasonably convince a trier of fact that defendant was provoked, that the provocation was adequate, that he had insufficient time to cool off — there was testimony that indicated the axe handle was in mid swing when defendant fired — and that he had in fact not cooled off between the time of the provocation and when the shot was fired.

¶ 9. As for defendant's Rule 33 claim, "a new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *State v. Ladabouche*, 146 Vt. 279, 285, 502 A.2d 852, 856 (1985). The evidence presented here — that the victim had repeatedly threatened defendant, that he had repeatedly attacked defendant, that on the occasion in question the victim yelled threats, physically blocked defendant from returning to his home, and came at defendant with an axe handle — in no way preponderated heavily against a verdict of voluntary manslaughter. "The court's decision on a new trial motion is a matter committed to the sole discretion of the court and will stand on appeal unless defendant can show that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *State v. Elkins*, 155 Vt. 9, 18, 580 A.2d 1200, 1205 (1990) (quotation omitted). Defendant has not made this

_____

its logical conclusion, a defendant who offers testimony which conclusively proves his guilt, even a total admission, should nevertheless go free if the prosecution does not elicit the same testimony. The absurdity of this argument is self evident.

showing here. As such, defendant's weight of the evidence claim cannot prevail.

¶ 10. Defendant next claims that the trial court committed prejudicial reversible error when instructing the jury and poses three grounds for this argument.

¶ 11. The first ground on which defendant claims jury instruction error was the trial court's decision not to require the jury to choose and unanimously agree upon one of the three possible mental states that can be used as a basis to support a conviction of voluntary manslaughter or second degree murder: intent to kill, intent to do great bodily harm, and wanton disregard of the likelihood of death or great bodily harm. Defendant argues that by failing to require this unanimity, the jury charge violated defendant's constitutional rights under Chapter I, Article 10 of the Vermont Constitution. It does not appear that defendant raised the constitutional argument at trial, and thus it is waived. See *State v. Hinchliffe*, 2009 VT 111, ¶ 31, 186 Vt. 487, 987 A.2d 988 (holding failure to preserve issues below results in waiver, even of constitutional issues). Even had proper objection been made, there was no error, and defendant's argument cannot prevail. Defendant's contention is essentially that if twelve jurors conclude a defendant possessed "intent to kill," a guilty verdict for voluntary manslaughter or second degree murder could stand; likewise if all twelve jurors conclude a defendant possessed intent to inflict "great bodily harm," a guilty verdict could stand, but if eleven jurors agree a defendant had intent to kill while one concludes instead that he acted with intent to inflict great bodily harm or with wanton disregard, then the constitutionally required outcome would be a hung jury and a retrial.

¶ 12. We addressed the question of ascending mental states in *State v. Bolio*, 159 Vt. 250, 253-54, 617 A.2d 885, 887

(1992), where we held that "[w]hen the State establishe[s] the higher culpable mental state of specific intent, it necessarily establishe[s] the lower state of recklessness or negligence." We explained that a person who acts purposely or knowingly "acts in a more egregious manner than one who acts recklessly . . . the person's level of intent has *exceeded* simply acting reckless[ly]," and thus the higher culpable mental state of specific intent necessarily establishes the lower state of recklessness. *Id.* The same holds true here: while a finding of wanton disregard is enough to satisfy the intent prong of voluntary manslaughter, a finding of either of the two higher mental states would also be adequate, as they each subsume wanton disregard. The element required to sustain a conviction of voluntary manslaughter is that a defendant have *"intent,"* and the three mental states described above are merely other ways to demonstrate defendant had the requisite intent. As long as all jurors were unanimous on the ultimate issue of intent, which of the three alternative methods used to inform each decision as to intent is immaterial. The trial court's instruction was therefore proper.

¶ 13. Defendant next contends that the jury instructions were prejudicial because the self-defense-instruction was erroneous as it unduly emphasized the State's theory of the case. The instructions were as follows, with the specific portion objected to underlined:

> Finally, the State need disprove only one of the above circumstances justifying self-defense beyond a reasonable doubt. The State need not disprove all of the above circumstances justifying self-defense. *For example, the State may disprove any of the following circumstances: A belief by the defendant of imme-diate-imminent risk of serious bodily injury or death; a reasonable belief of imminent risk of serious bodily injury or death; or the force used was necessary and proportionate and defendant was not at fault for bringing about the situation surrounding the death. If the State disproves any of the circumstances beyond a reasonable doubt, you find that the Defendant did not act in self-defense.* If you find beyond a reasonable doubt that the State has not disproven self-defense, you must find the Defendant not guilty of the charge under consideration.

Defendant objected that this instruction overly emphasized the State's position. In reviewing jury instructions, we consider them in their entirety. See *State v. Viens,* 2009 VT 64, ¶ 10, 186 Vt. 138, 978 A.2d 37. "A party appealing a jury charge has the burden of establishing that the charge was both clearly erroneous *and* prejudicial. . . . Although the trial court has the responsibility to instruct the jury fully and correctly on every point raised by the material evidence, the degree of elaboration lies within its sound discretion." *Knapp v. State,* 168 Vt. 590, 591, 729 A.2d 719, 720 (1998) (mem.) (emphasis added). The trial court's instruction, on its face, does not emphasize any one party's case. It is an iteration of the law by way of examples. The judge chose a specific list of what must be disproven, but stated all of the prongs in the affirmative, giving no hint of which way the court expected the jury should vote. The instructions are not an erroneous statement of law nor are they inherently prejudicial.

¶ 14. Defendant argues that the supplemental instructions given upon request of the jury were prejudicial as well because they overemphasized the State's theory of the case. During jury deliberations, the jury sent a note out asking the following with regard to the jury instructions:

With a self-defense claim, does the State only need to disprove (1) immediate danger; and (2) use of force; OR (3) unreasonable force to acquit him on grounds of self-defense? Meaning if we believe the first two, but not (3), do we still need to find him not guilty?

Defendant asked the court to read the entire self-defense instruction back to the jury in response. The trial court denied this request noting that the jury's question was "pretty clear" and that the jury already had printed copies of the entire charge in the jury room. The court then answered the jury's question regarding the burden of proof by rereading the portion of the jury instructions quoted and underlined, *supra*, ¶ 13. Defendant argues that this action unduly emphasized the State's position. However, "[t]he necessity, extent and character of supplementary instructions requested by a jury are matters that are within the sound discretion of the trial court. We will reverse only upon a showing that the court abused its discretion *and* that prejudice flowed from that abuse." *State v. West*, 151 Vt. 140, 142-43, 557 A.2d 873, 875 (1988) (citations omitted) (emphasis added). That is, defendant must show that the court not only abused its discretion but also that the outcome of the jury's decision would have been different absent this abuse. Defendant has not shown that here. There was substantial evidence of guilt such that it is doubtful that this instruction had any effect on the ultimate outcome.

¶ 15. Finally, defendant claims that the portion of the jury instructions enumerating the elements of self-defense was erroneous because the court required the purely subjective element of self-defense — relating to the honesty of belief of imminent peril — be reasonable. The jury instructions defendant objects to are as follows:

Self-defense means that every person has the right to use a reasonable amount of force to defend himself if he actually reasonably believes two things: (1) that he is in immediate danger of bodily harm; and (2) that the use of such force was necessary to avoid the danger.

According to defendant, by placing a reasonableness requirement on the honesty prong, that is, the "purely subjective inquiry," the court turned this into an objective test. However, requiring that a belief be *subjectively reasonable* is possible and, in fact, required in these instances. Defendant actually quotes the relevant portion of the seminal case for this point in his brief: "A defendant must have an honest belief of imminent peril, but that honest belief by itself is insufficient to invoke the defense. The belief must be grounded in reason." (quoting *State v. Wheelock*, 158 Vt. 302, 308, 609 A.2d 972, 976 (1992)). No part of placing a reasonableness requirement on a subjective inquiry makes it inherently objective. Further, our case law requires that the honestly held belief be reasonable. Thus we find no error in these instructions.

¶ 16. Defendant next contends that it was reversible error for the trial court not to allow defendant to present evidence of specific incidents of threats by the victim against others to support his claim of self-defense. The court did allow some evidence of specific prior incidents of threats against defendant, specific incidents of violence against others, as well as evidence of the victim's reputation for violence and intimidating behavior. Nonetheless, defendant points to five specific instances where he believes the trial court erred in failing to allow testimony.

¶ 17. Defendant first claims it was error for the trial court to disallow a witness from testifying that she heard the victim threatening defendant. However, that

witness did testify about this matter. Thus, this contention is baseless.

¶ 18. Defendant next claims that it was error for the trial court to disallow testimony about the instances in which the victim put marijuana plants on defendant's porch. But there was repeated testimony on this topic. One witness testified to three separate instances when she returned from shopping with defendant to find marijuana plants on his porch. Defendant testified that the night before the shooting he found marijuana plants on his porch, threw them into the road, and called defendant's landlord to complain at which point the victim appeared at his house screaming "I am going to kill you." Defendant's landlord also testified about the marijuana plants on the porch. Hence this contention is also baseless.

¶ 19. Defendant claims it was error for the court to exclude testimony about two specific instances of threatening behavior against persons other than defendant. In one instance, the victim shot a blue heron and then looked menacingly at his neighbor when she wanted to help the bird. In another, the victim acted in a threatening manner, holding a cross bow, while a landlord and a tenant argued about the tenant moving out because she was not paying her rent.

¶ 20. The trial court excluded this testimony about these matters on relevance grounds. The court found that as the incidents were only threats of violence, rather than violent acts, they should be excluded pursuant to Vermont Rule of Evidence 403. The court found these threats had no great probative value and their admission would create significant confusion. "We review trial courts' evidentiary rulings deferentially and reverse only when there is an abuse of discretion resulting in prejudice." *State v. Spooner*, 2010 VT 75, ¶ 15, 188 Vt. 356, 8 A.3d 469. We find exclusion of these incidents was a proper exercise of discretion. Threats, as opposed to actual violence,

have limited relation to a self-defense claim, i.e., that defendant reasonably and actually believed he was in immediate danger of bodily harm and that he used reasonable force to avoid this danger. See *Wheelock*, 158 Vt. at 307, 609 A.2d at 975-76. While evidence of previous violent acts could support an inference that defendant's fear of imminent harm was actual and reasonable and the amount of force he used in response was proportionate, evidence of mere threats against others does not support an inference that defendant's fear of imminent harm was actual and reasonable without more. Further, given the volume of evidence in the record of the victim's actual physical assaults against defendant and others, his threats against defendant, and his reputation for violence, we find no prejudice as a result of exclusion of this evidence. The trial court did not abuse its discretion in making this ruling.

¶ 21. Defendant next contends that the trial court should have allowed him to testify that his landlord told him that if he did not stop calling the police, the landlord was not going to be able to control the victim's response. Defendant claims this evidence is relevant to show that the victim was the first aggressor on the day of the shooting, that the victim threatened defendant with an axe handle, and that defendant actually and reasonably believed that he was in imminent danger of death or serious bodily injury when he shot the victim. But this evidence was merely the opinion of a third person about possible future events and thus was not relevant to the theory that the victim was the first aggressor or that he threatened defendant with an axe handle. What defendant's landlord thought the victim might do is not relevant to *defendant's* state of mind at the time of the killing. Additionally, the jury was allowed to hear evidence several times over about instances in which defendant's landlord had to restrain the victim from attacking de-

fendant and heard testimony that the victim had told defendant's landlord that defendant deserved a beating. Thus even had the evidence been relevant, its prejudice outweighed its probative value, and no harm results from its exclusion. The trial court's exclusion of this evidence was proper.

¶ 22. Finally, defendant argues that the court should have admitted testimony about the victim's alleged threat to burn down a neighbor's barn. Again defendant claims that this evidence was relevant to his claim that the victim was the first aggressor, that he threatened defendant with an axe handle, and that defendant believed he was in imminent danger. However, defendant never offered any evidence showing that defendant knew of this threat at the time of the shooting, and thus it cannot be relevant to his then present state of mind. Defendant counters that it is probative of the victim's state of mind, but the victim's state of mind is immaterial to the question of self-defense. Further, the woman who had originally told police about this alleged threat had changed her story by the time of trial. Thus in order to introduce the testimony, defendant would have had to put the reneging witness on the stand and then, after her denial of the incident, call the officer to whom she reported it originally to refute her denial. The court excluded the evidence as nonprobative and tending to create confusion and mislead the jury. We agree.

¶ 23. Defendant's last argument concerns certain comments made by the State during trial which he claims denied him a right to a fair trial. The statements concerned recordings of conversations between defendant and his sister while he was in jail. The recordings had been offered into evidence, and the State twice referred to them as the "jailhouse recordings." In neither of these instances did defendant request a mistrial. Defendant did request a limiting instruction in the second instance, which the court granted. Post trial defendant sought a new trial pursuant to Rule 33, but this was denied.

¶ 24. "The trial court is in the best position to assess whether any comment, in the context of the trial before it, is prejudicial enough to warrant a new trial." *State v. Desautels*, 2006 VT 84, ¶ 11, 180 Vt. 189, 908 A.2d 463. While statements which "characterize[] the accused as a hardened criminal and put his bad character and past criminal record squarely before the jury," *State v. Garceau*, 122 Vt. 303, 306, 170 A.2d 623, 625 (1961), may require a new trial, the risk of prejudice is not the same when the statements show that defendant was "merely in the correctional center pending trial." *State v. Lawrence*, 137 Vt. 597, 602, 409 A.2d 997, 1000 (1979) (*overruled on other grounds by Jones v. Shea*, 148 Vt. 307, 532 A.2d 571 (1987)). In light of these standards, the comments made by the State were harmless. Preliminarily, the phrase "jailhouse recordings" was used only twice in a brief manner and was likely of little significance to the jury's ultimate decision in light of the other evidence presented. See *Desautels*, 2006 VT 84, ¶ 11 (police officer's testimony that she arrested defendant at the office of his parole officer did not warrant a mistrial where it appeared to be "insignificant in the context of the evidence"). Further, the "jailhouse recordings" were dated August 28, 2008 and December 24, 2008 — after defendant had killed the victim. The logical inference to be drawn is that these recordings were made when defendant was in jail awaiting trial for this crime. No evidence was presented that would lead the jury to conclude defendant had been incarcerated for other crimes. Thus, we find these statements harmless.

*Affirmed.*