NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 4

No. 2014-340

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Criminal Division |
| | |
| Ivan Alcide | October Term, 2015 |

Thomas A. Zonay, J.

William H. Sorrell, Attorney General, and David Tartter, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

Matthew F. Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Defendant Ivan Alcide was charged with possession of heroin and cocaine and sought to suppress all evidence of drugs seized from his vehicle after a police dog indicated the presence of drugs. The trial court found that the contraband was obtained through the illegal expansion of the scope of a motor vehicle violation stop into a criminal drug investigation, suppressed the evidence, and dismissed the charges. The State of Vermont appeals the trial court's grant of defendant's motion to suppress and dismiss. On appeal, the State contends that a minimal delay following the completion of a traffic stop for a dog sniff is reasonable under federal and state law and, in the alternative, that the trial court committed plain error in excluding evidence based upon an illegal detention when the evidence was unrelated to the detention itself. Defendant has filed a motion to dismiss this appeal on the grounds the State

untimely filed its notice of appeal. We reject defendant's argument and conclude we do have jurisdiction over this appeal. However, in light of the U.S. Supreme Court's decision in Rodriguez v. U.S., ___ U.S. ___, ___, 135 S.Ct. 1609, 1612 (2015), which established that the Fourth Amendment does not permit a dog sniff conducted after the completion of a traffic stop that is "prolonged beyond the time reasonably required to complete the mission" of issuing a ticket for the violation, we affirm the trial court's decision to dismiss the case against defendant.

¶ 2. The trial court's findings of fact are uncontested. Defendant's automobile was stopped on August 11, 2012 at around 5:00 P.M. in Montpelier. The corporal who stopped defendant was in his cruiser with a drug-sniffing dog when he heard radio transmissions between the dispatcher and another police officer. That officer requested information about the registration of defendant's vehicle; the dispatcher informed the officer that the registration was valid but defendant's license was under suspension. The corporal had received information from the Federal Bureau of Alcohol, Tobacco, and Firearms (BATF) that defendant was a drug dealer in central Vermont, though "no specific information about [defendant's] alleged activities was given, nor was there information given to establish that any of the underlying information . . . was reliable." Nevertheless, based on the information from BATF and the fact that he had a drug dog and was "always looking to make drug arrests," the corporal requested information as to defendant's whereabouts and went to locate him.

¶ 3. Subsequently, the corporal saw defendant's vehicle traveling towards him on Vine Street, a public highway, and recognized defendant as the driver. Before the corporal could stop defendant's vehicle, defendant pulled into the driveway of a residence that the corporal knew belonged to the family of a deceased police officer. He called out to defendant, who told him he was looking for the house of a woman, whose name the officer recognized as a person who used drugs and was associated with known drug users, even though he "had never arrested her for any drug offenses, nor was he aware of drugs having ever been found on her."

2

¶ 4. The corporal directed defendant to sit in his vehicle. After obtaining defendant's license and registration information, he contacted dispatch and confirmed that defendant's license was in fact suspended. He also called an agent at BATF, who informed him that defendant was "on the front line of dealing drugs" in central Vermont.

¶ 5. When the corporal returned to defendant's vehicle, he informed defendant he would be mailing a ticket for operating a motor vehicle while under suspension. He then asked if there were any drugs in the car. Defendant denied having drugs and, when asked, denied permission for a search of the vehicle. The corporal had not observed any drugs on defendant's person or within the vehicle, nor had he seen anything to indicate defendant was under the influence of illegal drugs during the stop itself. The corporal returned to his cruiser and released the drug dog and walked him around defendant's vehicle. Defendant was not in the vehicle when the dog circled the vehicle. The dog alerted to the presence of drugs upon reaching the driver's side door. The corporal informed defendant of the alert; he again asked for permission to search, and defendant denied permission. Approximately seven to eight minutes had passed from the time the corporal stopped defendant until he deployed the drug dog.

¶ 6. The corporal seized and transported defendant and his vehicle from the scene in order to apply for a search warrant. After conducting a search pursuant to an issued search warrant, the corporal located cocaine and heroin within a first-aid box in the vehicle, resulting in the instant charges.

¶ 7. Defendant moved to suppress all evidence seized from his vehicle on the grounds that the drugs were obtained as a result of an illegal expansion of a motor vehicle violation stop into a criminal drug investigation. Following a hearing, the trial court issued a ruling granting the motion. The trial judge held that while the initial traffic stop was justified by the corporal's observation that defendant was operating a vehicle with a suspended license, the officer lacked a "reasonable, articulable suspicion of drug activity" sufficient to support the drug investigation and deployment of a canine as required by Article Eleven of the Vermont Constitution. See

<u>State v. Cunningham</u>, 2008 VT 43, ¶ 39, 183 Vt. 401, 954 A. 2d 1290 (Skoglund, J., concurring). The trial court noted that the officer relied upon "generalized information for which reliability was not established" in deciding to expand the stop into an investigation, and that the "hunch" that defendant was involved in drug activity "simply [did] not rise to the level sufficient to form the basis for any reasonable suspicion" of present drug activity. The trial court also concluded that the stop "extended beyond the time reasonably necessary . . . to address the traffic offense," a finding compounded by the fact the corporal asked for permission to search the car and deployed the drug dog after informing defendant he would mail a ticket for the traffic violation, the point at which he presumably accomplished the purpose of the stop.

¶ 8. On appeal, the state "does not take issue" with the trial court's determination that the corporal lacked a reasonable, articulable suspicion of drug activity. Instead, the state raises two arguments: (1) that a de minimis delay following completion of a traffic stop is reasonable under the Fourth Amendment, and defendant waived any state constitutional challenge; and (2) that the trial court committed plain error by excluding evidence based upon an illegal detention of defendant when the evidence would have been discovered even if the detention did not occur.

¶ 9. We first must consider defendant's argument that this appeal is not properly before us because the State's appeal was untimely. Although the trial court's decision was entered on July 3, 2014, the State signed and filed its Vermont Rule of Appellate Procedure 4 notice of appeal with the trial court on September 8. Defendant argues that this filing was too late. In response, the State argues that although the correct notice of appeal was not filed until September, the prosecution had filed a motion for permission to appeal an interlocutory ruling under V.R.A.P. 5 on July 10, which was granted by the trial court on August 25 without opposition, and was sufficient to put the defense on notice of the appeal. We agree and will consider this appeal as timely filed.

¶ 10. A mistake in designating a judgment appealed from is "not always fatal, so long as the intent to appeal from a specific ruling can be fairly inferred by probing the notice and the

other party was not misled or prejudiced." Sanabria v. U.S., 437 U.S. 54, 67 n. 21 (1978); accord Greensleeves, Inc. v. Smiley, 942 A.2d 284, 291 (R.I. 2007) (noting that there is "virtual unanimity among American appellate courts as to the pragmatic approach to be taken with respect to the adequacy of a notice of appeal"). In Vermont, we have similarly "decline[d] to interpret Rule 4" in an unduly narrow fashion, Casella Const., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 5, 178 Vt. 61, 869 A.2d 157, in recognition of the limited purposes served by a notice of appeal: to inform the "parties and tribunals concerned that the proceedings are not concluded so that they may respond accordingly" and to invoke "appellate jurisdiction by accomplishing the transfer of the case to the reviewing authority while the question sought to be reviewed remains open to appeal." Badger v. Rice, 124 Vt. 82, 84-85, 196 A.2d 503, 505 (1963); see also Peabody v. Home Ins. Co., 170 Vt. 635, 638, 751 A.2d 783, 786 (2000) (mem.) (noting that appeal rights are to be "liberally construed in favor of persons exercising those rights").

¶ 11. Here, instead of filing a notice of appeal from the trial court's dismissal order under Rule 4, the prosecution mistakenly requested permission to appeal an interlocutory appeal under Rule 5. The interlocutory order granting the motion to suppress was the cause of the dismissal order because without the suppressed evidence, the State no longer had the evidence to proceed with the prosecution. The trial court granted permission on August 25, 2014. Under V.R.A.P. 5(b)(6)(A), the order of the superior court serves as a notice of appeal.

¶ 12. Defendant was aware of the State's intent as of the July 10, 2014 motion and the court's order of August 25, and has not indicated that he suffered any prejudice on account of the State's mislabeling. Because the Rule 5 motion clearly indicated the State intended to appeal from the trial court's order on suppression and dismissal to this Court, and because "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to what appellate court," Becker v. Montgomery, 532 U.S. 757, 767 (2001), we hold that the State's motion for permission to appeal an interlocutory

5

ruling was sufficient to afford defendant with notice, and consequently sufficient to permit us jurisdiction over this appeal.

¶ 13. We turn to the merits of the State's appeal. In considering a trial court's disposition of a motion to suppress, we review all legal conclusions de novo and uphold findings of fact "unless clearly erroneous." State v. Mara, 2009 VT 96A, ¶ 6, 186 Vt. 389, 987 A.2d 939. "It is a question of law whether the facts as found met the proper standard to justify a particular police action." Id. However, in evaluating a dismissal under Vermont Rule of Criminal Procedure 12(d), "we examine the evidence in the light most favorable to the State, and determine whether the evidence . . . would fairly and reasonably tend to show beyond a reasonable doubt that defendant committed the offense". State v. Valyou, 2006 VT 105, ¶ 4, 180 Vt. 627, 910 A.2d 922.

¶ 14. The substance of this appeal is very much affected by the United States Supreme Court decision in Rodriguez v. U.S., ___ U.S. ___, 135 S.Ct. 1609 (2015), which was issued after the trial court decision in this case and after the State filed its initial brief. In its initial brief, the State argued that the trial court's decision should be reversed because under the 4th Amendment to the United States Constitution a very brief, de minimis detention following a legitimate traffic stop does not require an independent reasonable, articulable suspicion of wrongdoing. However, as noted by defendant in his brief, the Rodriguez decision unequivocally resolves this legal issue against the State. In Rodriguez, a majority of the Court held that a "police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Rodriguez, ___ U.S. at ___, 135 S.Ct. at 1612. A seizure justified only by a police-observed traffic violation therefore becomes unlawful "if it is prolonged beyond the time reasonably required to complete the mission" of issuing a ticket for the violation. Id. (citation, quotation, and alteration omitted). Here, where the State has conceded that the corporal "lacked a reasonable, articulable suspicion of drug activity," the fact that defendant was only briefly delayed following a valid traffic stop is

6

immaterial. As Justice Ginsburg wrote for the <u>Rodriguez</u> majority, "authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." <u>Id</u>. at 1614. Consequently, the corporal's authority to detain defendant ended when he informed defendant that he would be mailing a ticket for driving with a suspended license and so "address[ed] the traffic violation that warranted the stop." <u>Id</u>. Absent individualized suspicion of defendant's criminal activity, the corporal had no authority to continue defendant's detention, and the State's objection to defendant's motion to suppress cannot be sustained on the argument that an additional detention for a minimal period is permissible.

¶ 15. In its reply brief to this Court, the State acknowledges that <u>Rodriguez</u> does invalidate the prosecution's primary argument that a de minimis delay following completion of a traffic stop is reasonable under the Fourth Amendment. However, the State continues that suppression is nevertheless unwarranted because the evidence would have been discovered "with or without the defendant's unlawful detention." The State asserts that defendant could not drive the vehicle away because of his suspended license, and that the dog did not alert to defendant's person, indicating his detention bore no relation to the discovery of drugs in the vehicle. The State argues that under <u>U.S. v. Sharpe</u>, 470 U.S. 675, 683 (1985) and <u>State v. Pitts</u>, 2009 VT 51, ¶ 21, 186 Vt. 71, 978 A.2d 14, a defendant must show some causal relationship between his detention and the seizure of evidence in order to obtain suppression of evidence as the result of an unlawful detention.

¶ 16. We need not reach the merits of this argument because the State did not raise it at the trial level. The State contends this Court can find that the trial court committed plain error in excluding evidence based upon an illegal search where there was no causal nexus between the illegal detention and the evidence seized. But the plain error doctrine is rooted in the constitutional rights of a criminal defendant; in general, the State is not entitled to this review on appeal. See <u>U.S. v. Olano</u>, 507 U.S. 725, 732-36 (1993) (limiting plain error review to cases where "there [is] error that is plain and that affects substantial rights," results in prejudice to

defendant and "seriously affects the fairness, integrity or public reputation of judicial proceedings" (internal quotations and alteration omitted)); State v. Spooner, 2010 VT 75, ¶ 22, 188 Vt. 356, 8 A.3d 469 (describing plain error as a "defect[] affecting substantial rights" that "strikes at the very heart of the defendant's constitutional rights"); State v. Yoh, 2006 VT 49A, ¶¶ 39-40, 180 Vt. 317, 910 A.2d 853 (noting that the Olano test of obvious error that affects substantial rights and causes prejudice to the defendant is a "guide for applying our own plain-error standard"); Reporter's Notes, V.R.Cr.P. 52 (noting that despite the similar effect of Rule 52(a) to Civil Rule 61, the harmless error rule is applied more sparingly in criminal litigation "in view of the special interest of the court in assuring fairness to criminal defendants").

¶ 17.    We recognize that a few federal circuit courts have allowed the government to seek review of sentencing decisions based on asserted plain error without preservation in the trial court. See U.S. v. Perkins, 108 F.3d 512, 517 (4th Cir. 1997); see also U.S. v. Gordon, 291 F.3d 181, 193 (2d Cir. 2002). In reaching this decision, the courts note that Federal Rule of Criminal Procedure 52(b), which provides for plain error review, does not explicitly limit it to issues raised by the defendant. V.R.Cr.P. 52(b) is identical to the federal rule. Without holding that we would follow these decisions in a sentencing context, we note that the issue here is very different from that in the federal sentencing appeals, and we find no precedent where plain error review has been allowed to overturn a suppression decision.* We do not find that the suppression

---

*     We note that there are other reasons why we would deny plain error review in this case, even if the prosecution is generally able to challenge a suppression decision based on plain error. The State argues that a finding of plain error based on the ground it raises would result in reversal of the suppression decision. In fact, the State has other hurdles to overcome. The trial court found that defendant called the woman whose house he was looking for and she came to the scene of the stop and was present before the corporal released the drug dog. The woman worked for defendant and had driven his car at times while his license was under suspension. Since she was present and could drive the car, there is a factual dispute over whether she could have driven the car away before the drug dog sniffed the drugs. If the State had raised its argument below, the court could have determined the necessary facts.

Moreover, we have not yet ruled whether a drug dog can be used to sniff out drugs without reasonable suspicion of criminal activity under Article 11 of Chapter I of the Vermont

decision "seriously affects the fairness, integrity or public reputation of judicial proceedings" in a case where defendant was clearly detained unconstitutionally.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

Constitution.  The issue was raised in State v. Cunningham, 2008 VT 43, 183 Vt. 401, 954 A.2d 1290, but not decided.  See id., ¶¶ 51-52 (Dooley, J., concurring and dissenting).  Defendant raised Article 11 in the trial court.