## State of Vermont v. Raymond Giroux, Sr.

[561 A.2d 403]

No. 88-154

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed April 14, 1989

362

*John Churchill, Chittenden County Deputy State's Attorney,*
Burlington, and *Robert Katims, Appellate Attorney,* Montpelier,
for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General,* and *Henry Hinton,*
*Appellate Defender,* Montpelier, for Defendant-Appellant.

**Morse, J.** Raymond Giroux was convicted, after a jury trial,
of sexual assault of a 14-year-old girl in violation of 13 V.S.A. §
3252(3).* He raises numerous claims of error on appeal. We re-
verse and remand for a new trial because of error in the court's
jury instructions on reasonable doubt. We also reach those other
points likely to be raised on remand.

In early August, 1985, defendant's daughter Christina, nine
years old, and the alleged victim, were camping out in a tent in
the back yard. Christina was unable to get to sleep and asked her
father to stay with her for a while. Defendant did so, and
Christina soon fell asleep.

Thereafter, according to the complainant, defendant talked to
her about how much he loved her and made sexual advances to-
ward her culminating in sexual intercourse. The girl's account in-
cluded defendant removing her underwear, nightgown and robe
and kissing and fondling various parts of her body. She was unco-
operative and asked defendant to stop. They spoke in normal to
exerted tones. Thereafter defendant and the girl slept. All this

---

* A person who engages in a sexual act with another person and . . .
    (3) The other person is under the age of 16, except where the persons are
      married to each other and the sexual act is consensual;
    shall be imprisoned . . . .

allegedly occurred in a three-person tent. Christina testified that she heard nothing, even though she was a light sleeper.

Defendant denied sexually assaulting or making any advances toward the complainant, but did admit to being in the tent at the request of his daughter. He slept for a few hours and left.

Two weeks later the complainant told an older cousin about the episode. She waited because of a fear of defendant who, she claimed, said he would kill her and her family if she reported the incident. The police were called when her parents learned of her story soon thereafter. After an investigation, defendant was charged with the assault and arraigned on December 6, 1985.

In the spring of 1986, defendant left Vermont while charges were pending against him, in violation of bail conditions. He was arrested in Texas several months later and waived extradition to Vermont.

At trial, witnesses testified that complainant had earlier told them that she suspected her mother was having an affair with defendant. Her mother admitted she was having an affair with defendant during July of 1985. The girl also testified, in a vague way, about an incident before the assault when defendant touched her on her breasts, explaining why she feared and disliked him before the night in question. Finally, the police reported remarks made by defendant that the girl was sexually active with boys and that she "regularly hugged and kissed him."

## I.

### Reasonable Doubt

The defense argued that complainant falsely accused defendant because she knew or suspected her mother was having an affair with him and she did not want her parents to divorce. The defense further pointed out the implausibility of her account of being sexually assaulted in a small tent while her companion slept. The State argued that she would not have stuck to her story had it not been true, and portrayed her as not the type and not sophisticated enough to concoct such a devious scheme.

The trial court explained to the jury that it must find the defendant not guilty unless the State overcame the presumption of innocence. Reasonable doubt was explained as a search for the truth, to be "convinced the charge is true." The court went on:

You go through the case, you'll find a doubt. I'm using that as an example. You can assign a reason for it. What does that term mean? It means it's not a doubt that's based on speculation, conjecture. On, what if, what if, what if? What if they asked one more question? Pick on this. You're bound by the case and the strengths and the weaknesses of the case. You go through it. You doubt the truth of the charge and this is the reason why. It's as simple as that. A doubt for which you can assign a reason for. That's what it is.

Another way to put it, it's a confidence. What we're looking for here is a confidence that a juror can leave the jury room convinced that you've done your job correctly. This is a more important matter of life for everyone involved here. All of us have been in experiences in our life where we have been required to make decisions that we would just as soon not make. It's a serious matter. We have done our best in dealing with it. We've investigated the facts as best we can. We used the best reasoning processes and we've come up with what we think is the best resolution of the problem facing us. We are confident. We might not be comfortable, but we're confident we've done the right thing. That's what both sides are looking for here. Confidence in your decision. Has the state proven the case to you beyond a reasonable doubt?

Earlier, the court instructed that "any reasonable doubt that comes in here springs from the evidence. That's what the term means. It's a doubt that springs from the evidence."

The defense objected that the instruction on reasonable doubt did not adequately inform the jury of the standard required to convict and, in particular, that the admonition to search for the truth of the charge did not convey the State's burden of proof beyond a reasonable doubt. We agree.

The burden of proof in a criminal case is quite simply that a jury cannot convict unless it is convinced beyond a reasonable doubt of the truth of every element of the crime charged. *In re Winship,* 397 U.S. 358, 364 (1970). Any finding short of that requires a verdict of not guilty. A reasonable doubt on any element of the offense must follow with an acquittal. If this standard is somewhere in the trial court's instructions in this case, its communication to the jury in any meaningful way was lost.

The jury's task is not simply to determine the truth or falsity of the charge, to convict if it is true, acquit if it is false. The jury must acquit even when it thinks the charge is probably true. The instructions here did not effectively tell the jury that the search for truth involved a search for truth beyond a reasonable doubt.

Assuming the jury understood that a reasonable doubt should translate into an acquittal, the court limited reasonable doubts to those which "spring from the evidence." There is nothing in the instructions to intimate that reasonable doubt also may "spring" from the lack of evidence on a point. In addition, we have recently discouraged the use of instructions that require jurors to assign a reason for doubt and that compare the decision to convict with important decisions in one's personal life. *State* v. *Francis*, 151 Vt. 296, 301-04, 561 A.2d 392, 395-97 (1989). The use of this language compounded the overall failure of the instructions.

The error here cannot be deemed harmless. The jury deliberated nearly seven hours in this case where the evidence of guilt was not overwhelming. We cannot conclude beyond a reasonable doubt that the jury would have convicted defendant given a fair charge on the burden of proof. See *State* v. *Hamlin,* 146 Vt. 97, 106, 499 A.2d 45, 52 (1985).

## II.

### The Element of Intent

The defendant maintains that the offense charged includes a mental element, a wrongful intent as opposed to an innocent intent. He argues that wrongful intent should have been included in the information and charged to the jury. The State maintains that the offense of sexual assault with a minor is a strict liability crime.

We need not decide today the issue posed because the defendant did not object at trial and we find plain error absent. The theory of the defense was false accusation by the victim. Defendant maintained that he did not touch the girl at all, not that he touched her in an asexual manner lacking wrongful intent. Intent was not an issue in this trial. Even if intent were an element of the offense, therefore, its omission from the information and jury charge would not constitute the miscarriage of justice required for plain error. See *State* v. *Roy,* 151 Vt. 17, 27-28, 557 A.2d 884, 891 (1989).

## III.

### Flight

■ Before and during trial, the defendant moved to exclude evidence that in the spring of 1986 he left Vermont in violation of bail conditions. The motion was denied. Defendant argues that because the "flight" occurred approximately six months after he was charged, its probative value as evidence of a consciousness of guilt was "substantially outweighed by the danger of unfair prejudice." V.R.E. 403. He also contends that the court should have instructed the jury, as he requested, that the more remote in time from the offense and charge is the departure from the jurisdiction, the less weight should be given the inference of guilty consciousness.

The court did inform the jury, however, that evidence of flight has "very, very limited probative value," is by itself not sufficient to support a finding of guilt, and can mean "very innocent things that are totally consistent with the concept of being not guilty [like] fear, confusion [and] ignorance."

The instruction was not error, see *State v. Unwin,* 139 Vt. 186, 193-94, 424 A.2d 251, 255-56 (1980) (similar limiting instruction upheld), and it was within the court's discretion not to charge that remoteness has a mitigating effect.

Defendant also urges us, for the first time on appeal, to prohibit any instructions on the issue of flight as placing undue emphasis on some of the evidence and having the tendency to shift the burden upon the defendant to explain an innocent reason for the flight. Whatever the merit of this argument, we do not decide it on this record. The issue was not preserved and giving the instruction was not plain error.

## IV.

### Prior Conduct

Defendant raises two instances of conduct occurring prior to the incident which he urges were inadmissible. First, complainant testified that defendant had touched her on her breasts, which is why she was afraid of him and disliked him. Second, evidence was introduced that defendant thought the girl was sexually active. Defendant claims the latter evidence was inadmissible as violative of the Rape Shield Law, 13 V.S.A. § 3255(a).

■ We conclude both were admissible as relevant to defendant's state of mind. The fact that defendant thought of her as sexually active has the tendency to make the claimed assault more probable than had he thought of her as sexually inactive. V.R.E. 401. The Rape Shield Law has no bearing in this context. The evidence was not admitted to prove that complainant was promiscuous and therefore probably consented to the sexual act. Consent was not an issue under § 3252(3).

The incident involving a prior sexual touching was not introduced to impeach defendant's credibility by bad acts, V.R.E. 608(b), nor to prove his character to show that he acted in conformity therewith, V.R.E. 404(b). Rather, it tends to establish his belief that his victim was relatively vulnerable to sexual advances; as such, it was relevant and admissible. The trial court did not abuse its discretion.

*Reversed and remanded for a new trial.*