2012 VT 48

## State of Vermont v. Jeffory L. Hammond

[54 A.3d 151]

No. 11-100

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Eaton, Supr. J., Specially Assigned**

Opinion Filed July 6, 2012

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Peter F. Langrock* and *Devin McLaughlin* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Jeffory Hammond appeals his convictions for sexual assault and lewd and lascivious conduct. Defendant argues that: (1) he was entitled to a judgment of acquittal based on the complainant's contradictory and otherwise

incredible testimony; (2) alternatively, he is entitled to a new trial for the same reasons; (3) the court's jury instructions were erroneous; (4) the court erred under Vermont's Rape Shield statute, 13 V.S.A. § 3255, by allowing the State to present testimony from the complainant about her lack of sexual experience; and (5) the court erred by allowing nonexpert and expert "anecdotal" testimony about the manner in which teenage victims sometimes report sexual assault. We affirm.

¶ 2. In October 2008, defendant lived in Colchester with his wife, daughter, and two stepdaughters, complainant and her sister. On the night of Saturday, October 4, defendant was at home alone with complainant. Complainant, then an eighteen year old high school student, had run a cross-country race and complained that her legs hurt. Defendant offered to give her a leg massage.

¶ 3. At trial, complainant described what happened next as follows. Defendant sat on the couch, and she lay across the couch on her stomach with her legs across his. Defendant began massaging her calves. Defendant then moved his hands up her legs, reached under her shorts, and began massaging her lower buttocks. Complainant was uncomfortable but said nothing. Defendant moved one of his hands toward her inner thigh and then penetrated her vagina with one or two of his fingers, up to the second joint, for about two minutes. Scared, complainant remained silent. After defendant stopped, complainant went to her room.

¶ 4. Shortly afterwards, her friend M.W. came to the house to watch a movie. M.W. testified that complainant acted normally. Complainant testified that after M.W. left, defendant asked if she had told. Complainant said she had not, and defendant then said not to tell her mother. Complainant's version of events included declaring to defendant that "nothing happened" in order to change the subject, and incidents of normalcy such as going to church the next day with defendant and getting a ride to school with him on Monday. When her mother returned home, complainant did not tell her what happened.

¶ 5. Over the following months, complainant began reporting what took place during the massage. She first told her sister, two or three weeks later, that defendant's leg massage "felt a bit uncomfortable after a little while," but did not elaborate. Two or three weeks later still, complainant told her friend J.P. that defendant gave her a massage that had gotten "a bit awkward."

¶ 6. Complainant further testified that following the massage incident her relationship with defendant became evermore contentious and that she "distanced" herself from her mother to avoid telling what happened. Complainant and defendant increasingly fought over house rules. The tension culminated one evening in May 2009 with a major argument over her taking a piece of food. Then hearing her mother and defendant arguing over defendant's treatment of her, complainant decided to tell.

¶ 7. On the next day, complainant told her mother that defendant gave her a leg massage the previous October and that it became "inappropriate and very uncomfortable." They agreed to talk more later because, in complainant's view, her mother was "still processing" and complainant had to go to work. She testified that the following night she purposely, but inaccurately, told her mother that defendant touched her "butthole" during the massage because it was too awkward to say he touched her vagina.

¶ 8. That same week, unaware of mandatory reporting obligations, complainant told a high school teacher about the massage. The teacher reported it to the guidance counselor, who contacted the police. Complainant spoke with a police officer, and testified that she did not know what the officer meant when asked if defendant penetrated her genitalia. The officer then explained penetration and that defendant could get in significantly more trouble if he penetrated her than if he did not. Complainant testified that, based on the explanation, and to avoid getting defendant into more serious trouble, she said he did not penetrate her.

¶ 9. Complainant next met with a detective from the Chittenden Unit for Special Investigations (CUSI) and gave a sworn statement. According to her testimony, she may have repeated that defendant touched her "butthole" and denied that defendant penetrated her. At this meeting, complainant also said she did not want to proceed with criminal charges, and she testified that, at this point, she wanted only for defendant to get help, admit what he did, and apologize to her.

¶ 10. At some point after this CUSI interview, complainant received a letter from defendant. He wrote that his "actions were wrong, damaging, hurtful, inconsiderate, disrespectful, and embarrassing for all," that he took "full responsibility" for them, that he was "glad . . . that [she was] accurate with her testimony" given at her CUSI meeting, and that his arrest would be "warranted."

Complainant testified that she felt that defendant finally admitted what he did, and that she still just wanted him to get help. Complainant's grandmother also testified that defendant visited her in the same month, was very emotional and admitted that he touched complainant "inappropriately," but did not describe what he did.

¶ 11. Complainant requested another meeting with CUSI in late May because of guilt over not disclosing the full truth, and wanted to tell CUSI that defendant did in fact penetrate her. Complainant further testified that even after relating this information, she remained ambivalent about formal charges. Complainant decided otherwise, however, upon learning that defendant started to deny the incident and assert that complainant made up her penetration claim at the behest of her mother.

¶ 12. Defendant was charged in June 2009 with one count of sexual assault under 13 V.S.A. § 3252. His first trial ended in a hung jury. He was retried on the original sexual assault count, joined with an additional count of lewd and lascivious conduct under 13 V.S.A. § 2601. Defendant was convicted on both counts and appealed.

I.

¶ 13. Defendant made a post-trial motion for judgment of acquittal under V.R.Cr.P. 29(c), arguing that the evidence was insufficient to support his convictions. The criminal division denied the motion as to both counts. As to the sexual assault count, the court explained in part that defendant's "real complaint" was that complainant's allegation of an unlawful sexual act was incredible because she "described the [massage] in various ways to various persons at various times." It reasoned that the jury was free to resolve the question of complainant's credibility in defendant's favor, but decided against him. The court confirmed that complainant's testimony, if believed, was sufficient to show defendant's conduct was intentional and that there was no evidence that his contact was consensual. The court denied the motion for acquittal on the lewd-and-lascivious-conduct count on the same basis. Defendant argues this was error, given that complainant's testimony was rife with unexplained contradictions and lies.

¶ 14. Reviewing a motion for judgment of acquittal, the test is whether "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and

reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Boglioli*, 2011 VT 60, ¶ 7, 190 Vt. 542, 26 A.3d 44 (mem.) (quotation omitted). The court should enter a judgment of acquittal only if the State fails to offer "any evidence to substantiate a jury verdict." *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999). Credibility questions raised by the evidence at trial are "entirely within the province of the jury." *State v. Hinchliffe*, 2009 VT 111, ¶ 22, 186 Vt. 487, 987 A.2d 988.

¶ 15. The State had to prove sexual assault by nonconsensual digital penetration and lewd and lascivious conduct by handling the complainant's genitals. The sexual assault charge specified that defendant "engaged in a sexual act with [complainant]," by "compel[ling her] to participate in a sexual act without her consent by inserting his finger into [her] genital opening." See 13 V.S.A. § 3252(a)(1). "Sexual act," defined by the statute in pertinent part, is "conduct between persons consisting of . . . any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1). The lewd and lascivious conduct count alleged that defendant "engaged in open and gross lewdness and lascivious behavior . . . by having contact between his hands and [complainant's] vulva." See 13 V.S.A. § 2601. There was sufficient evidence to support defendant's convictions.

¶ 16. Defendant argues that the State's principal evidence on both charges, complainant's testimony, was "objectively" incredible, but our review must examine her testimony — in fact all of the evidence — in the light most favorable to the State. *State v. Boglioli*, 2011 VT 60, ¶ 7. Through cross-examination, defendant had the opportunity to highlight any perceived weaknesses in the complaining witness's differing narrations. See *Hinchliffe*, 2009 VT 111, ¶ 22 (explaining that cross-examination is defendant's tool to show inconsistencies in incriminating testimony). The question of the witness's objective credibility was ultimately for the jury to determine and is not for this Court to weigh on appeal. See *State v. Eaton*, 134 Vt. 205, 208-09, 356 A.2d 504, 506 (1976) (reiterating that it "was for the jury to decide, as the sole judges of the weight of the evidence, whether this testimony, taken together with any inconsistent statement made by the victim and the denial of sexual intercourse by the defendant, was sufficient to raise a reasonable doubt of the defendant's guilt in their minds"). As in

*State v. Eaton*, where the complaining witness alleged no penetration in her initial statement, but later did so, the evolution of complainant's claim is not "so contradictory, or inherently improbable or incredible as to be unworthy of belief." *Id.* at 208, 356 A.2d at 506. If credited by the jury, her testimony that defendant inserted one or two fingers into her vagina is sufficient evidence to support his convictions on both charges.[1]

## II.

■ ¶ 17. Defendant also moved post-verdict for a new trial "in the interest of justice" under Vermont Rule of Criminal Procedure 33. Defendant's motion raised five grounds, none of which challenged sufficiency of the evidence, and all of which were rejected by the court.[2] On appeal, however, defendant asks this Court for a new trial based on insufficiency of the evidence. Not presented below, the argument was not preserved for appeal, and we do not consider it. See *State v. Jackson*, 2008 VT 71, ¶ 21, 184 Vt. 173, 956 A.2d 1126 (holding that defendant failed to preserve claim that he was entitled to new trial because evidence failed to support restraint element of kidnapping charge where his post-trial motion for new trial argued only that evidence was insufficient to support intent element).

---

[1] Moreover, complainant's testimony did not stand in isolation. Though sufficient by itself, her version of events was bolstered by other evidence. While defendant argues that complainant's gradual reporting of defendant's conduct undermines her credibility, the State's expert testified that her manner of disclosure was common with teenage victims of sexual assault. In addition, defendant's emotional plea for his mother-in-law's forgiveness combined with his written acknowledgment that his behavior warranted arrest could reasonably be taken as an admission to criminal guilt. Considered together with complainant's testimony, the aggregate evidence supported the jury's verdicts.

[2] Defendant argued that he should be granted a new trial because: (1) the court erred under the Rape Shield Act by permitting the State to ask complainant about prior sexual conduct; (2) the jury overheard bench conferences during trial; (3) the court erred in replaying the entirety of complainant's testimony for the jury, when the jury asked to rehear only cross-examination; (4) the court erred by pressuring the jury to continue deliberating the next morning after they indicated deadlock late in the evening before; and (5) the court erred by accepting a verdict on count two while allowing it to continue deliberating on count one. Defendant appeals only the court's ruling relating to his Rape Shield Act objection.

## III.

¶ 18. Defendant next claims that the jury instructions on the sexual assault count were flawed in two respects. He first argues that the court erred in introducing the notion of anal penetration for the jury's consideration by reading the entire definition of "sexual act," which included "intrusion . . . into the genital or anal opening of another," while the State specifically charged defendant with "inserting his fingers into [complainant's] genital opening." Second, defendant asserts the court erred by failing to instruct the jury that defendant had to know complainant did not assent to his sexual contact.

¶ 19. Considering his first claim of error, defendant notes that after retiring to deliberate, the jury requested that the court "clarify the meaning of 'genital opening' " as it related to whether defendant had committed a sexual act, explaining that it was "concerned about the law with regard to the definition of sexual act," and asking if "the anus qualif[ied] as 'genital opening.' " The court, responding first to the requested clarification of "genital opening," advised that the parties and the court "agreed that the definition . . . is the entrance to the vagina." As to whether the anus qualified, the court then answered "no." One juror then asked, "Does that mean it can be interpreted both ways?" The court expressed uncertainty about what the juror meant, but provided the following supplemental instruction:

> In other words, a sexual assault that's charged here, it's alleged that Mr. Hammond inserted his fingers into [the complainant's] genital opening. Now, it's possible if the circumstances alleged support it that it could have been charged as an insertion into the anal opening. *But that has not been charged here.*

(Emphasis added.) Defendant contends that the discrepancy between the information filed and the full text of the statute, exacerbated by complainant's conflicting statements about where she was touched, mistakenly allowed the jury "to vote for conviction based upon a finding of insertion into the anal opening." He argues that the court's subsequent effort to clarify the instructions failed because "[n]owhere did the Judge clearly and simply state that [defendant] could not be convicted if the State only proved insertion into the anal opening."

¶ 20. Defendant concedes offering no objection to the instruction given at trial, and therefore this Court's review is limited to whether it was plain error. See V.R.Cr.P. 30 (providing that "[n]o party may assign as error any portion of the charge . . . unless he objects thereto before the jury retires to consider its verdict"); *State v. Erwin*, 2011 VT 41, ¶ 19, 189 Vt. 502, 26 A.3d 1 (reviewing jury instruction for plain error where defendant did not object to instruction at trial). No plain error lies in jury instructions unless, taking them as a whole, the instructions mislead the jury. See *State v. Streich*, 163 Vt. 331, 352-53, 658 A.2d 38, 53 (1995) ("There is no error if the jury charge as a whole conveys the true spirit and doctrine of the law, and there is no fair ground to say the jury has been misled by it." (quotation omitted)).

¶ 21. There was no such error here. Considering the instructions as a whole, the court's definition of "genital opening" was not misleading. Assuming for sake of argument that the court's initial instruction was unclear, its subsequent answer to the jury's question left no doubt that defendant could be convicted only if the jury found that he inserted his fingers into complainant's vaginal opening. The first part of the court's answer explained that "genital opening" meant the vaginal entrance. To the extent that answer did not by necessity disqualify the anus, the court's follow-up made clear that, if a charge of anal penetration was possible under the circumstances, there was no such charge in this case. Defendant asserts that the court's supplemental instruction was confusing because complainant's own statements supported an allegation of anal penetration. Even if this characterization of complainant's statements is accurate, the instruction in its entirety lent clarity, rather than confusion, to the point that the sexual assault charge before the jury was for vaginal, and not anal, invasion. Overall, the instructions were not misleading.

¶ 22. Looking next to defendant's complaint about a lack of knowledge instruction, the court advised the jury: "Consent means words or actions by a person indicating a voluntary agreement to engage in a sexual act. Lack of consent does not require proof of resistance." Defendant argues that his requested instruction, that the jury must find he had "knowledge that he compelled the victim to engage in the sexual act without her consent," was necessary since the element of nonconsensual sexual contact could be negated by his reasonable belief in complainant's consent to

the alleged contact. Because defendant raised no objection to the court's instruction as delivered, we again review for plain error only.

¶ 23. There was no plain error. Defendant repeats an argument that failed in *State v. Brown*, 153 Vt. 263, 571 A.2d 643 (1989), and *State v. Giroux*, 151 Vt. 361, 561 A.2d 403 (1989). Found guilty of sexual assault under § 3252(1)(A), the defendant in *Brown* argued on appeal that the court committed plain error by failing to instruct the jury that, to convict, it needed to find that he knew the victim did not consent to sexual contact. 153 Vt. at 270, 571 A.2d at 647. No error obtained, however, because defendant conceded lack of consent at trial. *Id.* at 271, 571 A.2d at 648. In *Giroux*, the defendant, charged with sexually assaulting a minor, contended at trial that the victim falsely identified him. 151 Vt. at 365, 561 A.2d at 406. His claim of plain error on appeal, that the court failed to instruct on what he asserted was a required element of "wrongful intent," was summarily rejected since intent was not an issue at trial — the sole premise of the defense was that defendant "did not touch the girl at all, not that he touched her in an asexual manner lacking wrongful intent." *Id.*

¶ 24. As in *Brown* and *Giroux*, whether defendant had a reasonable belief in assent to his contact was irrelevant to this case. The crux of the defense was lack of intentional sexual contact with complainant, not that defendant perceived her as acquiescing to a sexual advance. Defendant testified that he accidentally "bumped [complainant's] groin" or "butt," but denied penetrating her vagina with his fingers. Defendant neither claimed nor suggested a misunderstanding about complainant's volition, so whether consent or mistake was a valid defense was never a real issue at trial. As a result, there was no plain error in the instruction, and we need not address, in this case, the finer points of mens rea required for a violation of § 3252(1)(A). See *Giroux*, 151 Vt. at 365, 561 A.2d at 406 (declining to consider mens rea requirement of § 3252(3) on ground that victim's consent was irrelevant at trial).

IV.

¶ 25. Defendant also claims that the court crossed the Rape Shield Act's barrier against evidence of a complainant's "prior sexual conduct," 13 V.S.A. § 3255, by allowing the State to ask

complainant about her lack of sexual experience. Complainant testified that she did not initially tell her mother that defendant touched her vagina because she felt "uncomfortable" using such language. Asked by defendant on cross-examination if she ever discussed sex with her mother, complainant answered she had not because sex "was something . . . that has not happened in my life." Apparently to cast doubt on this claimed discomfort, defendant proceeded to confirm on cross-examination that at the time of her conversation with mother about the massage, complainant was eighteen years old, had taken a high school biology class, and was aware of sex organs. On redirect-examination, ostensibly to bolster complainant's explanation for her lack of sexual discussion with her mother, and over defendant's objection, the State asked her how many times "had [she] been penetrated before by someone's fingers before October 4, 2008," to which she answered "never."

¶ 26. Defendant argues that § 3255's bar against evidence of a complainant's "prior sexual conduct" should be read to exclude complainant's lack of sexual experience as well, and that therefore the court erred in allowing the State's inquiry about her sexual innocence on redirect examination. On the record presented, however, we need not address whether § 3255 precludes evidence of sexual inexperience. Instead, we review the court's allowance of the State's questioning using the same standard of deference as with other evidentiary rulings, and reverse "only when there is an abuse of discretion resulting in prejudice." *State v. Spooner*, 2010 VT 75, ¶ 15, 188 Vt. 356, 8 A.3d 469.

■ ¶ 27. Assuming, without ruling, that the statute would exclude evidence of prior sexual experience and innocence alike as irrelevant to whether there was a sexual assault,[3] this was not the purpose of the questioning here. The topic of complainant's chastity was elicited by defendant on cross-examination, who then further inquired into her sexual knowledge, all in an apparent effort to undermine her explained reluctance to disclose details of sexual contact to her mother. Complainant's sexual innocence was not, as posited by defendant, introduced to suggest or prove rape — the kind of evidentiary abuse recognized and banned by the

---

[3] See *State v. Patnaude*, 140 Vt. 361, 374, 438 A.2d 402, 407 (1981) (emphasizing illogic of "proving present conduct by past acts" and explaining Rape Shield Act's codification of inadmissibility of past sexual conduct as "worthless" and "without probative value" to disprove rape).

Rape Shield Act. *Patnaude*, 140 Vt. at 371-75, 438 A.2d at 407. Instead, the prosecution's question on redirect was to meet defendant's attack on the reason stated by complainant for less than full disclosure to her mother.[4] Defendant opened the door to this topic on cross-examination and cannot complain of prejudice resulting from his own initiative. The Rape Shield Act was inapposite to the subject matter, and the court's allowance of the testimony was no abuse of discretion.

## V.

¶ 28. Defendant claims lastly that the court erred in allowing nonexpert and expert "anecdotal" testimony regarding delayed and piecemeal reporting in sexual offense cases. Three witnesses not formally proffered as experts testified for the State on this topic. Complainant's guidance counselor testified that "it's typical of abuse victims that they — you know, they're ashamed and they're embarrassed, and they don't want to — they don't want to tell the whole story the first time, or even the second time. Sometimes they wait twenty years." The counselor's work experience included five years at a group home for abused or neglected children, time as a youth advocate in the detective division of a police department, and nearly fifteen years of school counseling at the high school level. Next, an officer testified that it was no

---

[4] To the extent defendant argues that the Rape Shield Act also bars evidence of prior sexual history to counter challenges to complainant's credibility, the Act is equally inapplicable. The Act does provide that "where it bears on the credibility of the complaining witness or it is material to a fact at issue," evidence of prior sexual conduct may be admitted only under three limited exceptions not arising in the trial below, 13 V.S.A. § 3255(a)(3)(A)-(C). These are, however, exceptions to the exclusion of prior sexual conduct in the first instance, which, as explained at length in *State v. Patnaude*, is an exclusion of evidence purportedly "proving present conduct by past [sexual] acts." 140 Vt. at 374, 438 A.2d at 407. This evidentiary tradition in rape cases, "devoid of logic, and [which] merely masked the forbidden practice of reasoning directly from one act to another," was disavowed by the Act. *Id.* at 373-74, 438 A.2d at 407. There was no such forbidden purpose behind the State's redirect examination in response to defendant's attack on the complainant's reason for nondisclosure. Thus, the statutory exclusion did not apply, and the statute's exceptions to the exclusion were not germane. See *id.* at 377-78, 438 A.2d at 409-10 (citing, as "perfectly consistent" with the settled exclusion of past acts to prove later conduct, reiterated in the Rape Shield Act, the holding of *State v. Murphy*, 134 Vt. 106, 353 A.2d 346 (1976), that evidence of earlier group masturbation was admissible to prove an alternative, nonrape-related cause of complainant's bruised hymen since defendant was not "trying to prove that because she was unchaste she would be less believable").

surprise that complainant failed to give a full and true account of the massage during her first interview considering that she spoke with a male police officer and the nature of the conversation. According to the officer, his background included training in the dynamics of victims of sex crimes during his time with CUSI and conducting several interviews with complaining witnesses in sexual assault or abuse cases. Finally, the detective testified that, based on her experience conducting interviews with complainants in thirty to fifty sexual offense cases, victims "sometimes . . . report[ed] it right away and sometimes it was several years before it would be reported." There was no objection to the witnesses' qualifications or to their testimony.

¶ 29. The State also presented a Ph.D.-credentialed clinical psychologist with experience treating victims of sexual abuse, who was recognized by the court, without objection, as an expert in psychology. The doctor testified that delayed reporting was common in cases of sexual abuse, that he had seen many such instances in his practice, and opined that where the abuse occurs between family members, a "host of . . . logical reasons in [the victim's] mind" may lead the victim to delay reporting. He also described multiple studies from the medical literature on this issue that support the occurrence of delayed reporting. In response to cross-examination, the doctor confirmed his opinion that delayed reporting was common, but did not speak to the accuracy of such reporting.

¶ 30. Defendant argues that the counselor and police witnesses were "non-experts" whose testimony was impermissible under Vermont Rule of Evidence 702, and that all four witnesses provided improper "anecdotal" testimony. Again, because no objection was made to this testimony at trial, we review for plain error. "Plain error analysis is fact-based, turning largely on the specifics of each case." *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993). "Plain error exists only in exceptional circumstances where the failure to recognize it would result in a miscarriage of justice or where the error is so grave and serious that it strikes at the heart of defendant's constitutional rights." *State v. Kinney*, 171 Vt. 239, 253, 762 A.2d 833, 844 (2000). In short, plain error is both evident and highly prejudicial. *Weeks*, 160 Vt. at 400, 628 A.2d at 1266. If the testimony on victim reporting here was error at all, it was not plain.

¶ 31. We first address defendant's argument that the witnesses he characterizes as "non-expert" were not qualified to opine on

delayed reporting within the context of Rape Trauma Syndrome. Vermont Rule of Evidence 702 provides that if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness *qualified as an expert* by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." (Emphasis added.) We assume that familiarity with delayed and inaccurate reporting of sexual assault is not a subject within the ken of most jurors. See *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 777-78 (1987) (explaining that reporting of child sexual abuse raises "complicated issues warranting expert testimony"). Accordingly, Rule 702 allowed testimony on the topic from witnesses qualified by specialized or technical knowledge or experience to speak on the frequency of delayed reporting by sexual assault victims. The rule does not, on the record presented and contrary to defendant's suggestion, condition admissibility of such testimony on expertise as to any particular medical diagnosis such as Rape Trauma Syndrome. Ordinarily, "[t]he competency of an expert witness is a threshold question to be determined by the trial court." *State v. Griswold*, 172 Vt. 443, 447, 782 A.2d 1144, 1148 (2001).

¶ 32. Given the rule's qualifications for an "expert," it is not plain that the counselor and police witnesses were nonexperts or otherwise unqualified to testify as they did. No objection was interposed below. The trial court was not required to interrupt direct examination, on its own, to conduct voir dire on the credentials of the three witnesses. The primary "responsibility to exclude objectionable testimony" lay with defendant. *State v. Roberts*, 154 Vt. 59, 74, 574 A.2d 1248, 1255 (1990) (citing *State v. Recor*, 150 Vt. 40, 46, 549 A.2d 1382, 1387 (1988), for its observation that "[t]he duty to exclude objectionable [testimony] lies squarely on the shoulders of defense counsel" (quotation omitted)). Given that the counselor, officer, and detective were experienced, although in varying degrees, in the area of sex crimes, victim response, and reporting behaviors, it is not clear that they were not competent to testify about the same, or that the subject of their testimony was beyond their expertise. The witnesses were asked only about their respective experience, as counselor, police officer, and detective, with delayed or incomplete disclosure by victims of sexual assault — with the officer also offering his reaction to this particular case based on his experi-

ence. It is nowhere evident from the record that these witnesses were asked for unfounded scientific opinions, as opposed to relevant comparative "specialized," if not "technical," knowledge acquired from their professional "knowledge, skill, experience, training, or education" admissible under Rule 702.

¶ 33. Defendant's complaint that the State's testimony was improperly anecdotal is unavailing. None of the State's witnesses relied on anecdotes, that is, mere stories or isolated and unsubstantiated second-hand information. As detailed above, the counselor, officer and detective each testified based on his or her own professional experience. Likewise, the State's doctor drew his opinion both from his clinical experience, as well as his knowledge of the medical literature, not to mention his own doctoral research. See V.R.E. 703 (providing that an expert may rely on information "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"); D. Kaye et al., The New Wigmore: A Treatise of Evidence: Expert Evidence § 3.1, at 75 (1st ed. 2004) ("Every expert witness relies on information and understanding acquired through education or experience, for it is education and experience that make her an expert.").

¶ 34. Defendant was free to cross-examine these witnesses on whether their past observations and knowledge were probative of the delayed reporting observed in this case. Defendant could also argue that, regardless of what was seen in other cases, complainant's manner of reporting reflected a lack of truthfulness. But this was all fodder for trial, and that this testimony may have been open to such attack establishes no error on appeal.

*Affirmed.*