*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-174

FEBRUARY TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Michael Hughes | } | DOCKET NO. 823-7-13 Bncr |

Trial Judge: Nancy S. Corsones

In the above-entitled cause, the Clerk will enter:

Defendant appeals jury convictions of unlawful trespass, possession of burglary tools, and burglary. We affirm.

At approximately five o'clock in the morning on July 28, 2013, police responded to an activated alarm at an accounting business in the Town of Bennington. Upon arrival at the scene, the officers observed an outside door half open and a padlock hanging from the door with screws removed and laying on the ground. The door is at the top of a cement stairwell that leads down to an inside locked basement door, which had not been disturbed. The stairwell was dirty and full of cobwebs. As it turned out, nothing was missing from the business.

While at the scene, one of the officers observed an individual riding a bicycle away from the immediate area. An officer intercepted and identified the bicyclist, who turned out to be defendant, while the others investigated the nearby grounds. Defendant had a single-sling backpack and was wearing a hooded sweatshirt covered in cobwebs. He told the officer that he was coming from a friend's house. The officer, with defendant's permission, looked inside defendant's backpack, which contained, among other things, tinsnips and a reciprocating saw with two metal-cutting blades. Meanwhile, the other officers observed a set of bicycle tire tracks in the wet grass on the other side of a hedgerow located twenty to thirty feet from the basement door. One of the other officers questioned defendant. A transcript of that recorded conversation, with some redactions, was given to the jury during defendant's trial.

Defendant was arrested and taken to the police station, where he waived his Miranda rights and agreed to be interviewed. At trial, the jury was given a transcript of that interview, with some redactions, and also viewed a portion of the video interview.

Defendant was charged with unlawful trespass, possession of burglary tools, and burglary. Following a two-day trial, the jury convicted him of all three charges. He stipulated to being a habitual offender and received a sentence of five-to-fifteen years to serve. On appeal, defendant argues that: (1) the evidence was insufficient to convict him of burglary or possession of burglary tools; (2) the trial court committed plain error by failing to instruct the jury that, to

convict him of possessing burglary tools, they must find that the tools were adapted and designed for a burglarious purpose; and (3) it was plain error, in violation of his right not to be placed in double jeopardy for the same conduct, for the trial court to submit to the jury both the unlawful trespass and the burglary charges.

The standard of review regarding defendant's claim of insufficiency of the evidence is well-settled. In determining whether the State presented sufficient evidence to support a jury verdict, we view the State's evidence most favorably to the prosecution and "determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." State v. Albarelli, 2011 VT 24, ¶ 17, 189 Vt. 293 (quotation omitted). Questions of credibility raised by the evidence at trial are entirely within the province of the jury, and thus the trial court may grant "a judgment of acquittal only if the State fails to offer any evidence to substantiate a jury verdict." State v. Hammond, 2012 VT 48, ¶ 14, 192 Vt. 48 (quotation omitted). But "evidence that gives rise to mere suspicion of guilt or leaves guilt uncertain or dependent on conjecture is insufficient" to support a conviction. Albarelli, 2011 VT 24, ¶ 17 (quotation omitted).

Defendant first contends that, with respect to the burglary conviction, the evidence was insufficient for the jury to find either that he entered the building or that he intended to commit larceny. We disagree. The State presented the following evidence at trial pointing to defendant's guilt. Police observed defendant at approximately five o'clock in the morning bicycling away from the area where the burglary occurred. Police also observed bicycle tire tracks on the other side of a hedgerow separating that area from the adjoining property where defendant was seen riding away. Those tire tracks appeared to match the knobby tire tracks on the bicycle defendant was riding. In his interview with police after he was given his Miranda rights, defendant made several statements that the jury could have considered incriminating in nature. At one point during the interview, even though he had previously denied being at the scene of the crime, defendant essentially admitted his presence that morning at the door where the alarm was triggered. He told the interviewing officer that the door was open, that the padlock was already off and hanging from the door, but claimed that he "didn't go all the way in." When the officer reminded him that they found him covered in cobwebs and that the stairwell inside the door was full of cobwebs, he responded that he was just covered in leaves from riding his bike.

At another point during the interview, he stated: "Maybe my intentions weren't good." He followed up this statement with these comments:

> Maybe I did . . . you know what I mean? Maybe I did and maybe
> I do want to talk to you, maybe I don't really want to lose my kids,
> maybe I just f_____ up. . . . [O]k, it could have been worse . . . my
> intentions weren't good to be out tonight, I was up to shady
> business.

He also told the officer that there was no purpose in going in any door, but "my intentions would be if I was to go in through the door then I would probably be trying to . . . rob something." He then proceeded to downplay his actions, stating that "if I took something, . . . I would . . . see that you know that I f_____ up." He explained: "It could have been worse though, I could have done something really bad. I could have . . . really burglarized somewhere, I could have really robbed somewhere. What if people [were] in the . . . building, you know what I

mean? That's occupied. I'm . . . screwed?" When the officer encouraged him to admit what he had done and told him that he had not said anything yet, defendant stated: "Well, I tried to put my . . . foot in my own mouth of course I'm not gonna . . . screw myself . . . . I got a lot to lose." One of the officers also testified that during processing, after the interview had been completed, defendant stated that he really wanted to tell the officer what he had done but was scared to do so. Another officer testified that during processing defendant stated that he never made it all of the way in and that there were no fingerprints or tool marks that would suggest that he had committed a crime.

Defendant is correct that these and other statements he made to police do not amount to an unequivocal admission that he entered the building with intent to commit a burglary. But the statements, in combination with other circumstantial evidence such as his possession of tools that could aid in a burglary and the fact that police found him nearby, before dawn, covered in cobwebs, were sufficient for the jury to conclude beyond a reasonable doubt that defendant did in fact enter the building intending to burglarize the premises. "Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." State v. Cole, 150 Vt. 453, 456 (1988). This is one of those rare cases where defendant's own testimony supports the circumstantial evidence as to his actions and his intent.

Defendant also argues that the evidence was insufficient to prove that he possessed his tools with the intent to commit a burglary. This argument rests on the assumption that the evidence was insufficient to demonstrate that he intended to commit a burglary—an argument that we have rejected.

Next, defendant argues the trial court committed plain error by instructing the jurors on the possession-of-burglary-tools charge without requiring them to find that the tools were "adapted and designed" for a burglarious purpose. We find no plain error. Our statute criminalizes the possession of tools "adapted and designed for cutting through, forcing or breaking open any building, room, vault, safe or other depository, in order to steal therefrom money or other property, knowing the same to be adapted and designed for such purpose, with intent to use or employ the same therefor." 13 V.S.A. § 1204. There being no Vermont model jury instruction on this offense, the State proposed a model jury instruction from Massachusetts, which has a nearly identical statute that also uses the "adapted and designed" language twice in the same manner as the Vermont statute. See Mass. Gen. Laws ch. 266, § 49. At the charge conference, defendant's attorney did not "see the State's proposed instructions as being inaccurate for our law," but offered a Florida instruction as "a more succinct version of the same." The court elected to proceed with the Massachusetts instruction and charged the jury as follows:

> To qualify as a burglary tool, it is not necessary that a tool or implement be designed or useable only for unlawful purposes. Items which are commonly used for unlawful purposes such as screwdrivers or chisels or kitchen knives are to be considered burglary tools if they can be used to break into a building, room, vault, safe or other depository. And are possessed for that reason.

Now, for the first time on appeal, defendant argues that the instruction does not accurately convey the meaning of the statute. We find plain error "only in those rare and extraordinary cases where the error is both obvious and strikes at the very heart of the

defendant's constitutional rights or results in a miscarriage of justice if we do not recognize it." State v. Campbell, 146 Vt. 25, 27 (1985); see State v. Johnson, 158 Vt. 508, 513 (1992) (stating that the error must be so prejudicial "that it undermines confidence in the outcome of the trial" (quotation omitted)). Thus, we will reverse based on plain error only when: "(1) there was an error; (2) the error is obvious; (3) the error affects substantial rights and results in prejudice to defendant; and (4) the error seriously undermines the fairness, integrity, or public reputation of judicial proceedings." State v. Butson, 2008 VT 134, ¶ 15, 185 Vt. 189.

In this case, defendant cannot demonstrate that the error is obvious. Indeed, the court was offered a model instruction from a neighboring state having a statute essentially identical to the Vermont statute. The fact that the statute criminalizes possession of tools adapted and designed for cutting through depositories does not necessarily mean that the tools have to be adapted and designed for a burglarious purpose. Compare Burrell v. State, 429 So. 2d 636, 639 (Ala. Crim. App. 1982) (interpreting statute similar to 13 V.S.A. § 1204 and holding that restricting application of statute only to tools especially designed for burglars "would emasculate the statute"), and Commonwealth v. Tivnon, 8 Gray 375, 380-81 (Mass. 1857) (interpreting similar statute as applying to tools designed for lawful uses but suitable for unlawful uses), with State v. Warner, 696 P.2d 1052, 1057 (Or. 1985) (interpreting statute prohibiting use of tools adapted, designed or commonly used for forcible entry and holding that tool "must actually be modified in some way to serve the unlawful endeavor"), and People v. Baer, 465 N.Y.S.2d 368, 368 (N.Y. App. Div. 1983) (concluding that duplicate room key stolen from hotel manager could not serve as basis for possession of burglar's tools under statute prohibiting use of tools adapted, designed, or commonly used for facilitating larceny). We do not decide the merits of this issue, but conclude that if there was any error, the error was not obvious, and thus we find no plain error.

Finally, defendant argues that it was plain error for the trial court to submit to the jury both unlawful trespass and burglary charges because doing so plainly violated his right not be placed in double jeopardy for the same conduct. Again, we find no plain error. The Double Jeopardy Clause provides that no person may "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. Because legislative bodies are empowered to define crimes and fix punishments and courts may not impose more than one punishment for the same offense, "the Clause is best understood . . . as limited to assuring that the court does not exceed its legislative authorization." State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt. 160 (quotation omitted). The Clause does not preclude the Legislature from imposing multiple punishments, "but its intent to do so must be clear." State v. Grega, 168 Vt. 363, 382 (1998). Hence, "[w]hen a defendant is tried in a single trial for two statutory offenses that criminalize the same conduct, whether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition." Id.

When, as in this case, there is no explicit statement of legislative intent to impose multiple punishments, "we apply as a rule of statutory construction the test first enunciated by the Supreme Court in [Blockburger v. United States, 284 U.S. 299, 304 (1932)]." State v. Ritter, 167 Vt. 632, 632 (1998) (mem.). Under the Blockburger test, which seeks "to divine whether the legislature intended to punish two separate offenses or one," Grega, 168 Vt. at 382, we consider two offenses to be the same offense for double jeopardy purposes unless each offense "requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304.

4

Defendant was charged with violating 13 V.S.A. § 3705(c), which, in relevant part, criminalizes the entry of a normally locked nonresidential building, and 13 V.S.A. § 1201(a), which criminalizes the entry of a building without license or privilege with the intent to commit one of several enumerated crimes, including petit larceny. In State v. Savo, 139 Vt. 644, 647 (1981), this Court held that unlawful trespass is not a lesser included offense of burglary because unlawful trespass includes elements—that normal access to the building be locked or that certain methods of notice against trespass be employed—not included in burglary. Thus, the unlawful entry charge includes the element of locked access not included in the burglary charge, and the burglary charge includes an element of intent to commit other crimes not included in the unlawful entry charge. Defendant acknowledges our holding in Savo, but argues that our case law since Savo has not required that double jeopardy be found only when one offense is a strict lesser included offense of the other. Defendant presents a convoluted argument for why Savo should not control in this instance, but presents no case law in which a double jeopardy violation has been found when a defendant was charged with both unlawful trespass and burglary. Just as with his second argument, defendant fails to demonstrate that the court committed an obvious error, if any error at all, in submitting both charges to the jury. Accordingly, we reject his plain-error argument on appeal.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

5