VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        23-AP-053



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JANUARY TERM,   2024

State of Vermont v. Paul William Grant\*

}   APPEALED FROM:
}   Superior Court, Washington Unit,
}   Criminal Division
}   CASE NO. 1298-10-18 Wncr
Trial Judge: Kevin W. Griffin

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction by jury of aggravated sexual assault with a victim under thirteen years old in violation of 13 V.S.A. § 3253(a)(8).  He argues that the court erred in denying: his motion for a judgment of acquittal; his request for an instruction on lewd or lascivious conduct (L&L) with a child; and his request to depose the putative victim.  We affirm.

### I.  Proceedings Below

Defendant was charged with the above crime in October 2018.  The alleged victim, A.G., was six years old.  Defendant sought to depose A.G. before the November 2022 trial under Vermont Rule of Criminal Procedure 15(e)(5), but his request was denied.

The following evidence was presented at trial.  At the time of the alleged incidents, A.G.'s parents had separated, and they shared equal custody of A.G. and another sibling.  A.G.'s mother was defendant's girlfriend.  A.G. lived part-time with her mother, defendant, and her siblings, first in Barre, and then in East Montpelier in the downstairs apartment of defendant's parent's two-unit residence.  Defendant's parents lived in the upstairs unit.  A.G.'s mother had two additional children with defendant during their relationship.  A.G.'s father lived with his mother.

When staying with mother, A.G. had her own room right off the kitchen.  Mother sometimes left A.G. alone with defendant or was otherwise in a separate room from A.G.  In September 2018, A.G. told her paternal grandmother that "Paul stuck his private in [her] mouth."  A.G. said that it happened a few times and she couldn't remember if she was four or five years old at the time.  She stated that one incident occurred in her bedroom and another occurred on the couch when "everyone was sleeping."  Grandmother told father about A.G.'s disclosure.  A.G. confirmed to father that her statement to grandmother was true and that it had happened

twice.  When father asked A.G. where the acts occurred, she got confused.  Father asked A.G. if it was in Barre or if she had already moved to "Paul and Emma's house," the names of defendant's parents.  A.G. replied that "we were at Paul and Emma's."  Father asked A.G. when the abuse had occurred, and A.G. indicated that she had been in "kindergarten," and she thought "it was spring."  Father filed a report with the Department for Children and Families (DCF) and did not ask A.G. any additional questions.

A trained DCF investigator conducted a forensic interview of A.G. at a child-advocacy center while a police officer watched remotely.  The interview was recorded and later played for the jury.  The DCF investigator also testified about the interview.  During the interview, A.G. acknowledged that she was there "to talk about Paul."  When asked to talk about that, A.G. replied "he's been putting his privates in my mouth."  A.G. pointed to her crotch area when asked to show where on her body her "privates" were located; she pointed to the same area when asked where "Paul's" private parts were located.  A.G. said that Paul's privates felt like a "bigger tongue," tasted like "mud," and said "sometimes it feels like a circle and sometimes it feels like an oval."  She said that it happened when she was on the couch watching television when mother was sleeping and that defendant told her not to tell her mother.  It also happened when she was in her bedroom.  A.G. said defendant came into her room, shut the door, and put his privates in her mouth.  During the interview, A.G. said this happened at "mom's house in Barre," but then indicated her mother's current residence.  When asked if it was the same house where A.G.'s "grandparents" lived upstairs, A.G. asked, "Emma and Paul?"  The DCF investigator replied, "Emma and Paul, yes," and A.G. then said, "yes."  When asked who else was home, A.G. said her 'brothers" and "mom and Paul."  Her mother was "cooking dinner."  She did not tell mother what happened because defendant told her not to.  A.G. said she was in kindergarten when the assaults occurred.  The DCF employee identified defendant at trial as "Paul Grant" who she had first met during a prior DCF investigation.

A.G. was ten years old at the time of trial.  She stated that she did not remember very much from when she was six years old and "living with Paul."  She confirmed that her memory of what "happened with Paul" was better than when she was six.  She indicated that she was in court "[b]ecause Paul did something inappropriate to me."  A.G. testified that defendant put his penis in her mouth on two occasions.

Defendant denied sexually assaulting A.G.  He acknowledged that mother commonly took naps, that someone could stand by A.G.'s bed and block the door, and that he was using crack cocaine in 2018, which prevented him from napping and impacted his judgment.

Defendant moved for a judgment of acquittal and a new trial, both of which were denied.  As relevant here, defendant complained that A.G. did not identify him in court, although he acknowledged that the DCF investigator had done so.  A.G. referred to her assailant as "Paul," which defendant noted was also his father's name and his father lived in the same location.

The court rejected defendant's argument.  It explained that the DCF investigator identified defendant in court, and almost all of the other witnesses provided some testimony with respect to the individuals who were part of the facts alleged in this case.  A.G.'s father also testified that the Paul Grant that this case concerned was the Paul Grant who became involved in a relationship with mother.  The court added that the evidence showed that A.G.'s family unit while she lived with mother was limited to mother, defendant, and her siblings.  A.G.'s in-court testimony referenced Paul.  Her testimony and the statements during her interview involved the

2

Paul who was involved with her mother at the time of the offense. Taken together, the court was satisfied that a jury could reasonably find beyond a reasonable doubt, taking the evidence in the light most favorable to the State, that defendant was the Paul who was alleged to have committed the charged acts. The court reiterated this analysis in its post-verdict ruling. It noted that the focus of the investigation was defendant's East Montpelier apartment, and defendant was the only person named Paul who shared an apartment with mother.

In addition to the motions above, defendant also asked the trial court to instruct the jury on lewd or lascivious conduct with a child, suggesting that the jury might find that he put some part of his "privates" in A.G.'s mouth but not his penis. Defendant acknowledged that the two crimes did not contain similar elements but argued that "the fundamental nature of the conduct is the same." The court found that lewd or lascivious conduct with a child was not a lesser-included offense of aggravated sexual assault of a victim under thirteen and it had no authority to include such an instruction, and further, the evidence did not support it. The court thus denied defendant's request. This appeal followed.

## II. Arguments on Appeal

### A. Motion for Judgment of Acquittal

Defendant first argues that the court erred in denying his motion for judgment of acquittal. He maintains that there was insufficient evidence to establish that he was the perpetrator because A.G. did not identify him by his full name and only one other witness did so. According to defendant, the court impermissibly shifted the burden of proof to him and the jury's verdict rested on speculation and conjecture. Alternatively, defendant argues that he was entitled to a new trial "because the verdict was contrary to the glaring lack of evidence, specifically on this point of identification."

On review of the denial of defendant's motion for judgment of acquittal, we consider "the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Hale, 2021 VT 18, ¶ 8, 214 Vt. 296 (quotation omitted). A judgment of acquittal is appropriate "only if the State fails to offer any evidence to substantiate a jury verdict." State v. Hammond, 2012 VT 48, ¶ 14, 192 Vt. 48 (quotation omitted). "Credibility questions raised by the evidence at trial are entirely within the province of the jury." Id. (quotation omitted). With respect to defendant's request for a new trial, we review the trial court's ruling for abuse of discretion. State v. Charbonneau, 2011 VT 57, ¶ 16, 190 Vt. 81.

The evidence here was sufficient to allow the jury to conclude that defendant sexually assaulted A.G. While "an in-court identification of the accused" is generally "an essential element in the establishment of guilt beyond a reasonable doubt," "there is no rule of law that requires identity to be established by an eyewitness." State v. Erwin, 2011 VT 41, ¶ 11, 189 Vt. 502 (quotations omitted). "Instead, identity can be inferred from all the facts and circumstances that are in evidence." Id. (quotation omitted).

The evidence here, as recounted above, allowed the jury to conclude that defendant was the "Paul" who sexually assaulted A.G. A.G. was living with mother, "Paul," and her siblings in an apartment in East Montpelier. Defendant had access to A.G. when mother was not present.

3

A.G. stated on multiple occasions that "Paul" stuck his privates in her mouth. Father understood A.G. to be talking about defendant and he provided testimony, as did A.G., from which the jury could infer that she could distinguish between defendant and the location where she was living, i.e., in East Montpelier at "Paul and Emma's." The DCF investigator identified defendant in court as the individual who was the subject of her investigation. A.G. described her living situation, and the presence of Paul, mother, and her siblings in the apartment when the abuse occurred. The jury could reasonably conclude that the "Paul" A.G. referenced was defendant, the individual living with A.G.'s mother in the apartment where the assaults allegedly occurred. As noted above, "[c]redibility questions raised by the evidence at trial are entirely within the province of the jury." Hammond, 2012 VT 48, ¶ 14 (quotation omitted).

The court did not shift the burden of proof when it observed that there was no credible evidence to suggest that defendant's father sexually assaulted A.G. Defendant suggested on cross-examination that perhaps A.G. was accusing his father of sexual assault because his name was also Paul. This was not only modifying evidence, but it was also a speculative theory clearly rejected by the jury as the trier of fact. We reject defendant's reliance on other modifying evidence as well, such as his complaint that A.G. did not describe "Paul" in detail, or testify in a way that "ruled out" defendant's father as the perpetrator, as well as his various challenges to the DCF investigator's identification of him. There is sufficient evidence to support the jury's determination that defendant was the perpetrator of the charged acts. Given our conclusion, we reject as unfounded defendant's related assertion that the absence of sufficient identification evidence warranted a new trial.

## B. Lesser-Included-Offense Instruction

Defendant next argues that the court erred in denying his request for an instruction on lewd or lascivious conduct with a child under 13 V.S.A. § 2602(a)(1), which he asserts is a lesser-included offense of aggravated sexual assault of a victim under age thirteen under 13 V.S.A. § 3253(a)(8). According to defendant, if the jury could not agree that the State's evidence established penis-to-mouth contact as charged by the State, it should have been allowed to consider if defendant put a testicle in her mouth, particularly given that the State did not oppose the instruction request.

We reject this argument. "Upon indictment or information for any offense, a person may be convicted of a lesser included offense if supported by the evidence. If requested by either party, the jury shall be informed of the lesser included offense if supported by the evidence." 13 V.S.A. § 14(a). The "question of whether an offense is lesser-included is one of law" and our "review is nondeferential and plenary." State v. Beaudoin, 2008 VT 133, ¶ 31, 185 Vt. 164.

In Vermont, a "lesser-included offense is one that is composed exclusively of elements shared with the greater, charged offense but lacks at least one element of that greater, charged offense." State v. Bean, 2016 VT 73, ¶ 7, 202 Vt. 361. Defendant acknowledged below that the crimes involve different elements. He asserts on appeal that L&L with a child "would have been based on substantially similar charging facts" and it was "on the same continuum of culpability as aggravated sexual assault on a child." That is not the test. "In order for a defendant to be entitled to jury instructions on a lesser offense than that for which he is charged, the elements of the lesser offense must necessarily be included within the greater offense." State v. Bourn, 139 Vt. 14, 15 (1980). "The lesser offense is included in the greater only if each of its elements is

4

always a necessary element of the greater offense." Id. at 16 (quotation omitted) (emphasis added).

Lewd or lascivious conduct with a child is defined as "willfully and lewdly commit[ting] any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child." 13 V.S.A. § 2602(a)(1). Aggravated sexual assault here is defined as "sexual assault" on a victim "under the age of 13," id. § 3253(a)(8), and a "sexual act" is defined as "conduct between persons consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." Id. § 3251(1).

We have previously held in the context of a Double Jeopardy challenge that lewd or lascivious conduct is not a lesser-included offense of aggravated sexual assault. State v. Wiley, 2007 VT 13, ¶ 8, 181 Vt. 300. As we explained there:

> There is at least one element of each crime that is not a part of the other: sexual assault includes the elements of compulsion and engaging in a "sexual act," i.e., contact between certain body parts; lewd and lascivious conduct contains neither of these elements. Indeed, lewd and lascivious conduct does not necessarily require physical contact between the perpetrator and victim . . . . Further, lewd and lascivious conduct includes the element of appealing to or gratifying one's sexual desires. Though appealing to sexual desire may be often associated with sexual assault, such motive is not an element of that crime, and lewd and lascivious conduct may thus be distinguished on that basis.

Id. ¶ 11 (citations and footnote omitted); see also Bourn, 139 Vt. at 16 (holding that simple assault is not a lesser-included offense of sexual assault, and stating that "[w]hile the instant case does not raise double jeopardy problems, we apply the same analysis in order to ascertain whether a defendant is entitled to jury instructions on lesser offenses pursuant to V.R.Cr.P. 31(c)"). Defendant offers no persuasive reason why we should reach a different conclusion here, nor does he argue that Wiley should be, or has been, overruled.

We are not persuaded to a contrary conclusion by State v. Nelson, 2020 VT 94, 213 Vt. 368, cited by defendant. In that case, we held that a defendant's convictions for sexual assault of a victim under the age of eighteen entrusted to his care by authority of law, and sexual exploitation of a minor, violated the Double Jeopardy Clause. We explained that "[e]ach of these two offenses, as defined by statute, technically require[d] proof of a fact that the other does not," but "as charged in this case, they required proof of the same set of facts and therefore constitute the same offense"; the offenses were also "directed at the same harm stemming from coercive sexual relationships." Id. ¶ 34. We therefore held "that subjecting [the] defendant to punishment for both crimes violate[d] the Double Jeopardy Clause." Id. Unlike Nelson, defendant was not charged with both L&L with a child and aggravated sexual assault on an individual under thirteen, and we are not asked to decide if he could be convicted of both crimes based on the same factual predicate. The question here is whether defendant was entitled to an L&L instruction as a lesser-included offense, and we conclude that the crimes plainly involve

different elements and he was not so entitled. We find the additional cases cited by defendant equally unpersuasive in light of our established precedent.

As the State notes, moreover, "the trial court has no obligation to instruct on lesser offenses that are only related to the offense charged by the prosecution." State v. Russo, 2004 VT 103, ¶ 19, 177 Vt. 394. We have specifically declined "to impose on trial courts any obligation to go beyond the charging of lesser-included offenses as determined under the traditional elements comparison test." Id. ¶ 24. Because lewd or lascivious conduct is not a lesser-included offense of aggravated sexual assault, no instruction was required. See, e.g., Beaudoin, 2008 VT 133, ¶¶ 30-39 (holding that trial court did not err in failing to instruct on lewdness as lewdness is not a lesser-included offense of lewd or lascivious conduct with a child).

C. Deposition of Minor Witness

Finally, defendant argues that the court abused its discretion in denying his request to depose A.G. He contends that the court should have accepted his reasons for wanting to depose A.G. as valid.

Pursuant to Vermont Rule of Criminal Procedure 15(e)(5):

> No deposition of a victim under the age of 16 shall be taken in a prosecution [for aggravated sexual assault] . . . except by agreement of the parties or after approval of the court. . . . The court shall not approve a deposition . . . unless [it] finds that the testimony of the child is necessary to assist the trial, that the evidence sought is not reasonably available by any other means, and that the probative value of the testimony outweighs the potential detriment to the child of being deposed. In determining whether to approve a deposition under this subdivision, the court shall consider the availability of recorded statements of the victim and the complexity of the issues involved.

Defendant argued below that a deposition was warranted given the passage of time. He maintained that because A.G. was now nine years old, she would "appear quite differently as a witness" than she had in her recorded interview, and he was entitled to the opportunity to prepare to confront her at her current age and maturity level. He also argued that he had not been allowed any input on the questions posed during A.G.'s forensic interview.

The trial court denied his request. It was unpersuaded that A.G.'s deposition testimony was necessary to assist the trial, or that the probative value of such testimony outweighed the potential detriment to A.G. The court added that defendant had other avenues to pursue the type of information that he sought. It saw little value in deposing A.G. just to see how she presented now as opposed to when she was six years old. It explained that her maturity from a six-year-old to a nine-year-old would be readily apparent when the case was tried, and the passage of a substantial period of time from arraignment to trial was not unusual. It added that defendant could explore on cross-examination the fact that he had no input into DCF's forensic interview and did not therefore explore other avenues of influence, and he could also, through the presentation of substantive evidence, explore facts and circumstances that might have played a role in A.G.'s statements.

6

We review the trial court's decision for abuse of discretion and thus, defendant must show "that the decision was untenable or clearly unreasonable." State v. Palmer, 169 Vt. 639, 640 (1999) (mem.). He fails to make the necessary showing here. The court offered a reasoned basis for its decision and defendant simply disagrees with the result. That does not suffice to show an abuse of discretion.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice